FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 14 2010 ★
BROOKLYN OFFICE

*rec'd 6-16-10*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Teddy Moore

    Plaintiff,

-Against-

T-Mobile USA, Inc.

    Defendant

Index No 10-CV-527(SLT)(CLP)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
ORIGINAL
JUL 21 2010 ★
6-21-2010
BROOKLYN OFFICE

PLEASE TAKE NOTICE, THAT THE PURPOSE OF THIS HEARING IS TO PUNISH THE ACCUSED FOR CONTEMPT AND SUCH PUNISHMENT MAY CONSIST OF A FINE OR IMPRISONMENT OR BOTH
WARNING: YOUR FAILURE TO APPEAR IN COURT MAY RESULT IN YOUR ARREST AND IMPRISONMENT FOR CONTEMPT OF COURT

## PETITION FOR CONTEMPT OF COURT

PLEASE TAKE NOTICE, that upon the annexed affidavit of Petitioner, and the exhibit annexed thereto, and upon all prior pleadings and proceedings had herein, Petitioner will move this court located at 225 Cadman Plaza East Brooklyn NY 11201
Before Judge Sandra L. Townes, on the Friday June 25, 2010 at 9.30 a.m or as soon thereafter as the parties can be heard for an order:

To hold the accused Mr. Jason C. Rubinstein, Esq, Mr. Daniel B. Rapport, Esq and the law office of Friedman Kaplan Seiler & Adelman LLP in contempt of court by imposing upon him sanctions in the form of imprisonment or/and fines for lies and misrepresentation and fraud upon the court, under its inherent power to protect the integrity of the court and as well under 18 U.S.C. § 401, Judiciary Law Article 19, and The common law which is law in New York under New York's Constitution

And for such other and further relief as this court deems just and proper
A verified answer, if any, should be filed in court at least seven days before such hearing.

ORDER
This motion is respectfully referred to Magistrate Judge Cheryl L. Pollak to hear and determine.
So ordered:

_____
U.S.D.J.

Respectfully submitted,

_____
Teddy Moore
83-26 Broadway #301
Elmhurst, NY 11373

## **AFFIDAVIT**

I the undersigned, Teddy Moore, declare under penalty of perjury as follows:

1. I am Petitioner/Plaintiff in this motion/case and this affidavit is in support of the petition hold the accused Mr. Jason C. Rubinstein, Esq, Mr. Daniel B. Rapport, Esq. and the law office of Friedman Kaplan Seiler & Adelman LLP in(Hereafter "The accused") in contempt of court by imposing upon them imprisonment or fines or both for lies and misrepresentation to the court.

2. Defendant alleged before this court by misrepresenting a coerced testimony of an employee, paralegal in the legal affair department (Exhibit 3 in the declaration of Jason C. Rubinstein) alleging among other lies as if "When Moore purchased his T-mobile handset, a seal in the form and size represented below was affixed on the box containing his handset, covering the sole opening of the box.."(Provision 3 there) and as well: "Moore would have been forced to break this seal in order to open the box containing his handset. In addition, the box containing Moore's handset included a copy of the standard T- Mobile Terms and conditions(Provision 4 there)

3. The aforementioned stated scenario never happened, it is a made up story for the court, a total lie and a fraud perpetrated upon the court. Defendant by their attorneys could have called up the store where I purchased my service (Not a handset only, a handset may be ordered over the internet) to disprove this lie but they have not done so because they do not care to present correct and true facts but fantastic stories that support their claims.

4. Defendant's attorneys are reckless with presentation of facts to the court and they should be held in contempt of court for breaking down the ability of the system to perform its

duty. They have no contract with me and they replace evidence by fraud upon the court that should be properly punished.

5. I purchased a cell phone service and I have not broken any boxes, I received the phone and the service (The handset was refurbished and it broke down after a while and was replaced with another refurbished handset) ready to make calls and I have not seen any boxes, and I have not seen that the store attendant has broken any seals either, probably because this was not a new phone or because the entire story is a hoax perpetrated on this court.

6. Based on this fraud Defendant predicated its entire request for arbitration on an alleged "Contract" by breaking a -none- existing box and handset and other hoaxes.

7. Whenever any officer of the court commits fraud during a proceeding in the court; he/she is engaged in "fraud upon the court". In Bulloch v. United States, 763 F.2d 1115. As well, "Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Kenner v. C.I.R., 387 F.3d 689 (1968);

8. In reply to these allegations the accused continued to lie as if: "Mr. Moore twice received a new handset from T-Mobile..." this is a lie contradicted by Ms. Boca herself that says in provision 8:"(Attached)...T-mobile agreed to furnish Moore with a refurbished handset..."Therefore the answer should be also subject to request to hold the attorneys in contempt of court for reckless misrepresentation of the facts in the answer to the claim of fraud.

9. Ms. Boca has never seen me or seen me breaking any seal and boxes and she was coerced to present these lies to the court as an employee of a defendant, because they were unable to present an affidavit from the attendant from the shop that I purchased my phone, who is independent and not subject to the machine of fraud.

10. Defendant and their attorneys are engaged in perpetrating fraud upon their clients (As proven in my case and as proven with hundreds of thousands of other who filed documented complaints over internet)[1], perpetrated fraud upon their employees as proved in this case with employee Baca(And proved by other documented complaints over the internet[2]), perpetrated fraud upon the public(As detailed on the website T-Mobile fraud watchdog) and perpetrated fraud upon the court as presented here for sanctioning

11. Defendant is the flag ship of fraud in the ocean of fraud by the cell phone industry. Had defendant been a natural person he/she would have been long ago imprisoned and sentenced for life and so would resolve the problem with this ultimate criminal entity misrepresented and disguised as a legitimate business.

12. The accused were reckless in representing the facts and thus should be held in contempt for misbehavior as officers of the court that have a duty to tell the truth in court and they attempted to break down the ability of the court to make a decision on the true facts and law.

13. This is my name and the content of this affidavit is true and correct.

---

[1] http://www.complaintsboard.com complaints t-mobile-c47827.html
[2] http://tmobilefraud.com

_____

Teddy Moore

**NOTARY PUBLIC**
Queens County state of New York

NOEMI N. GOMEZ
Notary Public, State of New York
No. 01GO6220517
Qualified in Bronx County
Commission Expires April 12, 2014

Sworn to before me on the 11th day of June 2010

Case 1:10-cv-00527-SLT -CLP Document 27 Filed 06/21/10 Page 7 of 18
Case 1:10-cv-00527-SLT -CLP Document 25 Filed 06/14/10 Page 7 of 12
Case 1:10-cv-00527-SLT -CLP Document 22 Filed 06/08/10 Page 1 of 2

## FRIEDMAN KAPLAN SEILER & ADELMAN LLP

BRUCE S. KAPLAN
EDWARD A. FRIEDMAN
GARY D. FRIEDMAN
BARRY A. ADELMAN
ERIC SEILER
ROBERT D. KAPLAN
ANDREW W. GOLDWATER
ROBERT J. LACK
GREGG S. LERNER
WILLIAM P. WEINTRAUB
RICHARD M. HOFFMAN
SCOTT M. BERMAN
GERALD ADLER
ERIC CORNGOLD
HAL NEIER
PHILIPPE ADLER
LANCE J. GOTKO
KATHERINE L. PRINGLE
MERYL S. ROSENBLATT
DANIEL B. RAPPORT
DAVID I. TANENBAUM
HALLIE B. LEVIN
ANNE E. BEAUMONT
MARY E. MULLIGAN
EMILY A. STUBBS
KENT K. ANKER
AMY C. BROWN
NALA AHUJA HARKER
RICARDO SOLANO JR.

1633 BROADWAY

NEW YORK, NY 10019-6708

TELEPHONE (212) 833-1100

FACSIMILE (212) 833-1250

WWW.FKLAW.COM

WRITER'S DIRECT DIAL
(212) 833-1131

WRITER'S DIRECT FAX
(212) 373-7931
E-MAIL
JRUBINSTEIN@FKLAW.COM

HARVEY WEISSBARD
NORMAN ALPERT
ANDREW A. QUARTNER
ASAF REINDEL
COUNSEL

JESSICA A. MURZYN
JEFFREY C. FOURMAUX
LISA S. GETSON
JOHN N. ORSINI
JEFFREY R. WANG
CHAD M. LEICHT
JASON C. RUBINSTEIN
MICHAEL A. GORDON
ROBERT S. LANDY
RICKIE M. SONPAL
STEVEN E. FRANKEL
L. REID SKIBELL
EAMONN O'HAGAN
DANIEL R. GREENBERG
SHEILA V. PAI
JESSICA RICHMAN SMITH
KEVIN L. OBERDORFER
ELLEN LONDON
JOHN C. LIN
ANDREW S. PAK
PHILIP A. WELLNER
BETTY W. GEE
AMY K. PENN
ANDREW LEVINE
GREGORY W. FOX
RAHUL AGARWAL
CHRISTOPHER M. COLORADO
KENNETH N. EBIE
KIZZY L. JARASHOW
BENJAMIN S. HOLZER

June 8, 2010

### BY ECF AND HAND DELIVERY

The Honorable Sandra L. Townes
U.S. District Court Judge
U.S. District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: *Teddy Moore v. T-Mobile USA, Inc.*,
      <u>No. 10 CV 00527 (SLT) (CLP)</u>

Dear Judge Townes:

    We represent T-Mobile USA, Inc. ("T-Mobile") in the above-referenced matter. We write in response to the letter from plaintiff Teddy Moore, dated June 1, 2010, in which Mr. Moore requests a conference in anticipation of filing a motion to hold T-Mobile and its attorneys in contempt.

    Mr. Moore claims that T-Mobile falsely represented to the Court in connection with its motion to compel arbitration that the handset he purchased from T-Mobile came in a box with a seal affixed across the box's sole opening notifying him of his obligation to arbitrate his disputes with T-Mobile. Mr. Moore insists that he purchased a refurbished phone from T-Mobile, which was not enclosed in a box, let alone a box sealed with the sticker described in T-Mobile's motion papers.

891523.2

Case 1:10-cv-00527-SLT -CLP  Document 27  Filed 06/21/10  Page 8 of 18
Case 1:10-cv-00527-SLT -CLP  Document 25  Filed 06/14/10  Page 8 of 12
Case 1:10-cv-00527-SLT -CLP  Document 22  Filed 06/08/10  Page 2 of 2

**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**

The Honorable Sandra L. Townes     - 2 -     June 8, 2010

In fact, as reflected in the enclosed affidavit of Andrea Baca, Mr. Moore *twice* received a new handset from T-Mobile, with a seal affixed to the sole opening of the box alerting Mr. Moore that by using T-Mobile service he agreed to be bound by the arbitration provisions of the T-Mobile Terms & Conditions.

Accordingly, as there is no basis for Mr. Moore's motion for contempt, his request for a pre-motion conference should be denied, and T-Mobile's motion to compel arbitration of Mr. Moore's claims should be granted in its entirety.

Respectfully,

*Jason C. Rubinstein*

Enclosure

cc:    Hon. Cheryl L. Pollak (by hand)
       Teddy Moore (by U.S. mail)

891523.2

Case 1:10-cv-00527-SLT -CLP Document 27 Filed 06/21/10 Page 9 of 18
Case 1:10-cv-00527-SLT -CLP Document 25 Filed 06/14/10 Page 9 of 12
Case 1:10-cv-00527-SLT -CLP Document 22-1 Filed 06/08/10 Page 1 of 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TEDDY MOORE,

        Plaintiff,

- against -                 10 CV 00527 (SLT) (CLP)

T-MOBILE USA, INC.,

        Defendant.
-----------------------------------------------------------x

## DECLARATION OF ANDREA M. BACA

I, ANDREA M. BACA, declare as follows:

1. I am employed as a paralegal in the Legal Affairs Department of T-Mobile USA, Inc. ("T-Mobile"). During the course of my employment with T-Mobile, I have also worked as an Executive Customer Relations Specialist. By virtue of my responsibilities in these positions, I have personal knowledge of, or have confirmed through my use of business records and discussions with appropriate T-Mobile personnel, the matters stated herein.

2. As set forth in my previous declaration in this matter, executed on April 14, 2010, plaintiff Teddy Moore ("Moore") signed up for wireless service with T-Mobile at a store operated by Mobile 4 U Inc. on August 27, 2008.

3. I understand that Mr. Moore now claims he purchased a refurbished handset and thus did not see a seal on the box containing the handset notifying him that he was agreeing to arbitrate his disputes with T-Mobile. In fact, Mr. Moore received two

Case 1:10-cv-00527-SLT -CLP   Document 27   Filed 06/21/10   Page 10 of 18
Case 1:10-cv-00527-SLT -CLP   Document 25   Filed 06/14/10   Page 10 of 12
Case 1:10-cv-00527-SLT -CLP   Document 22-1   Filed 06/08/10   Page 2 of 3

new handsets, both of which had a seal notifying him that he was agreeing to arbitrate his disputes with T-Mobile.

   4.   When he first activated service with T-Mobile, Moore purchased a new wireless handset from T-Mobile. This new T-Mobile handset was enclosed in a box, with a seal in the form and size represented below affixed on the sole opening of the box:

> **IMPORTANT**
> Read the enclosed T-Mobile Terms & Conditions. By using T-Mobile service, you agree to be bound by the Terms & Conditions, including the mandatory arbitration and early termination fee provisions.

   5.   Moore would have been forced to break this seal to open the box containing his handset. In addition, the box containing Moore's handset included a copy of the standard T-Mobile Terms & Conditions ("Terms & Conditions").

   6.   On September 4, 2009, Moore exchanged his wireless handset for another new T-Mobile wireless handset, which he also received in a sealed box. The same sticker described in Paragraphs 4 and 5, *supra*, was affixed across the box's only opening, and Moore would have been forced to break this sticker to open the box. The box also contained a copy of the Terms & Conditions.

   7.   Nearly five months later, on January 22, 2009, Moore contacted T-Mobile's Customer Service department, stating that his handset battery was functioning improperly and would not hold a charge for more than an hour. Moore requested that T-Mobile send him a replacement phone.

2

Case 1:10-cv-00527-SLT -CLP   Document 27   Filed 06/21/10   Page 11 of 18
Case 1:10-cv-00527-SLT -CLP   Document 25   Filed 06/14/10   Page 11 of 12
Case 1:10-cv-00527-SLT -CLP   Document 22-1   Filed 06/08/10   Page 3 of 3

8. In accordance with its warranty exchange policies, T-Mobile agreed to furnish Moore with a refurbished handset. Moore received this refurbished handset on or about January 29, 2009.

9. When T-Mobile sends a customer a refurbished handset in exchange for a malfunctioning handset, the box in which the replacement handset is enclosed is not sealed with a sticker in the form described in Paragraphs 4 and 5, *supra*, because the customer, having already activated and used T-Mobile service, has already consented to the Terms & Conditions.

10. When Moore received his refurbished handset, he had already received two new handsets, and had twice been notified that he was agreeing to arbitrate his disputes with T-Mobile.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 8, 2010.

_____
ANDREA M. BACA

3

# Teddy Moore

83-26 Broadway #301
Elmhurst NY 11373
917-715-7317
E-mail address: tm738@yahoo.com

---

June 11, 2010

To: Judge Sandra L. Townes
U.S Federal Court for EDNY
225 Cadman Plaza East
Brooklyn NY  11201

RE: Teddy Moore V. T.-Mobile USA Inc
Case:10 CV 00527 (SLT)(CLP)(E.D.N.Y)

Dear Judge Townes,

Attached please find my petition for contempt of court against the accused.

Thank you,

Teddy Moore

CC:  Mr. Jason C. Rubinstein, Esq.

Pro Se Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
TEDDY MOORE,

                       Plaintiff,

        - against -

T-MOBILE USA, INC.,

                       Defendant.

---------------------------------------------------------------x

10 CV 00527 (SLT) CLP)

**DECLARATION OF JASON C. RUBINSTEIN IN OPPOSITION TO MOORE'S PETITION TO HOLD COUNSEL FOR T-MOBILE USA, INC. IN <u>CONTEMPT OF COURT</u>**

       JASON C. RUBINSTEIN, under penalty of perjury, declares:

       1.    I am a member of the bar of the State of New York and of this Court and am associated with the law firm of Friedman Kaplan Seiler & Adelman LLP ("FKSA"), counsel for defendant T-Mobile USA, Inc. ("T-Mobile"). I submit this declaration in opposition to plaintiff Teddy Moore's ("Moore") petition to hold me, Daniel B. Rapport, and FKSA (collectively, "Counsel for T-Mobile") in contempt of court pursuant to 18 U.S.C. § 401.[1]

       2.    Moore's petition is devoid of merit and falls well short of alleging any conduct that could give rise to a criminal contempt citation. As the Second Circuit observed in *In re Williams*, 509 F.2d 949, 960 (2d Cir. 1975), "[t]o warrant a conviction in criminal contempt, the contemnor's conduct must constitute misbehavior which rises to the level of an obstruction of and an imminent threat to the administration of justice, and it must be

---

[1] Although Moore also premises his petition on Article 19 of the New York Judiciary Law, that statute has no application to these federal proceedings.

accompanied by the intention on the part of the contemnor to obstruct, disrupt or interfere with the administration of justice." *Id.* at 960. Such conduct must be proven beyond a reasonable doubt. *See id.*

3. At no time did Counsel for T-Mobile engage in any conduct that obstructed the administration of these proceedings. The crux of Mr. Moore's motion is that Counsel for T-Mobile "coerced testimony" from Andrea Baca, a T-Mobile employee, in connection with its motion to compel arbitration of Moore's claims. (Moore Affidavit in Support of Petition for Contempt of Court, dated June 11, 2010 ("Moore Aff."), at ¶ 2.) There is absolutely no evidence of such coercion and, to the contrary, Ms. Baca freely attested to the accuracy of both declarations she has submitted in this matter (*see* Exs. 1 & 2), each time under penalty of perjury.

4. Nor is there any foundation for Moore's allegation that Baca's statements were a "total lie and fraud perpetrated upon the court." (Moore Aff. ¶ 3.)

5. Moore claims that he is not obligated to arbitrate his dispute with T-Mobile because he never agreed to the arbitration provisions in T-Mobile's standard Terms & Conditions ("Terms & Conditions"), which are provided to all new customers and included in the box for all new handsets. Ms. Baca's first declaration rebuts Moore's claim by demonstrating that, in the ordinary course of business, T-Mobile routinely: (i) requires new customers such as Moore to agree to the Terms & Conditions, including the arbitration provisions thereof, as a condition of receiving T-Mobile service; (ii) encloses new handsets in boxes sealed with a sticker notifying customers that, by using T-Mobile service, they agree to arbitrate their disputes with T-Mobile; and (iii) includes copies of the Terms & Conditions in all boxes containing new handsets.

6. Moore also claims that he never received a new phone. Ms. Baca's second declaration rebuts Moore's claim by demonstrating that Moore received two new handsets, both of which would have had stickers notifying him of his agreement to arbitrate and both of which would have included the Terms & Conditions with the arbitration provision.

7. Although Moore may dispute the credibility and probative value of Ms. Baca's declarations, his disagreement with their substance does not make her statements perjurious. Nor does his contention that he never entered into a contract with T-Mobile in which he agreed to arbitrate his disputes with the company make Counsel for T-Mobile's good faith attempts to prove the existence of such a contract contemptuous or obstructive. *See generally Floersheim v Engman*, 494 F.2d 949, 952 (D.C. Cir. 1973) ("Criminal contempt is essentially reserved for willful contumacy and not good faith disagreement.").

8. Moore's accusations against Counsel for T-Mobile amount to nothing more than empty invective. In the course of these proceedings, Moore has repeatedly impugned the honesty and integrity of Counsel for T-Mobile, invariably without justification. He has accused Counsel for T-Mobile of defrauding their client and this Court, likened them to Nazis, and repeatedly insisted on their incarceration.

9. Moore's petition represents only another episode in his long history of using court submissions as vehicles for making unfounded, *ad hominem* attacks against members of the bench and bar alike. Indeed, Moore was disbarred by this Court, the U.S. Supreme Court, the U.S. District Court for the Southern District of New York, and the Supreme Court of the State of New York, Second Department, precisely for such behavior. *See In re Moore*, 177 F. Supp. 2d 197, 199 (S.D.N.Y. 2001) (disbarring Moore for filing papers with the United States Supreme Court containing gratuitous invective directed against the United States Court of

Appeals for the Second Circuit, including, *inter alia*, accusations that the Second Circuit was a criminal enterprise under RICO, that then-Chief Judge Winter should be tried as a racketeer under RICO, and that the Second Circuit had a "'corrupt nature,'" was a "'a strong supporter of fraud and recketeers [sic],' and . . . constitute[ed] 'a cancer in the legal system'"); *see also In re Disbarment of Moore*, 529 U.S. 1127 (2000) (disbarring Moore from U.S. Supreme Court bar); *In Re: Moore*, No. 00 MC 00177 (ERK) (E.D.N.Y. July 10, 2002) (disbarring Moore from the bar of this Court) (D.I. 8) (Ex. 3); *In re Moore*, 299 A.D.2d 38 (2d Dep't 2002) (disbarring Moore in New York).

10. As a *pro se* litigant, Moore has continued to use the judicial process as a platform for vituperation and harassment. In 2008, for example, he filed a verified complaint in the Southern District of New York accusing the Honorable Edward R. Korman, in his capacity as the judge overseeing *In re Holocaust Victim Assets Litigation*, No. 96 Civ. 4849 (ERK) (MDG) (E.D.N.Y.), of taking "advantage of his reputation and position . . . to commit the biggest embezzlement in US judicial history." (Verified Complaint, *Moore v. Korman, et al.*, No. 08 CV 03011 (S.D.N.Y.), at ¶ 6 (Ex. 4).) He further accused Judge Korman of conspiring with and accepting kickbacks from "shadowy figures," who Moore explained were "[m]embers of the Russian Mafia" (*id.* ¶ 10 & n.1), and depriving Moore of "millions of dollars in attorneys fees, because he was not . . . trusted to kick back part of the money." (*Id.* at ¶13.10.)

11. In addition, in the last two years, Moore has twice been admonished by members of the U.S. District Court for the Southern District of New York for his ongoing pattern of filing frivolous actions and motions, and threatened with orders barring him from filing future actions or motions in that court. *See Moore v. Badillo, et al.*, No. 09 CV 00305, at 8-9 (S.D.N.Y. Jan. 12, 2009) (Ex. 5) ("[P]laintiff recently has filed numerous repetitive and frivolous actions in

this Court as well as the Eastern District Court . . . . [P]laintiff is hereby cautioned that the further filing of repetitive and frivolous complaints or motions may result in an order barring him from filing further actions or motions in this Court without prior permission."); *Moore v. Raffaele, et al.*, No. 08 Civ. 1618 (KMW), at 3-4 (S.D.N.Y. Oct. 22, 2008) (Ex. 6) (same and forbidding Moore from filing any additional papers directed to the District Court under the docket number of the case).

12. Given his history and the exaggerated character of his accusations, Moore's petition should be accorded no weight, and it should be denied in its entirety.

13. In addition, T-Mobile respectfully requests that the Court enter monetary sanctions against Moore for his pattern of making abusive personal attacks against both T-Mobile and its attorneys. Moore's *ad hominem* attacks are unjustified, do not advance the conduct of this litigation, and are deserving of sanction. *See, e.g., Kahre v. United States*, No. CV-S-02-0375-LRH-LRL, 2003 U.S. Dist. LEXIS 6948, at *17 (D. Nev. Mar. 10, 2003) (ruling that *pro se* plaintiff's "decision to include unsubstantiated, vituperative statements with regard to the character and professional ethics of [defense counsel] plainly constitutes a violation of Rule 11"); *Katz v. Looney*, 733 F. Supp. 1284, 1288 (W.D. Ark. 1990) ("There is . . . no legitimate basis for the scandalous, impertinent and libelous statements made by plaintiff against one of the defendants . . . . The conduct of the plaintiff would be bad enough if he was an . . . uneducated person 'off the street', but . . . he is trained as a lawyer, albeit a disbarred one . . . . This case 'cries out' for Rule 11 sanctions . . . .").

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 17, 2010 at New York, New York.

_____
Jason C. Rubinstein