UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
TEDDY MOORE,

              Plaintiff,

                                          **REPORT AND
RECOMMENDATION**

           -against-                              10 CV 527 (SLT)

T-MOBILE USA INC.,

              Defendant.
-------------------------------------------------X

       Plaintiff Teddy Moore, appearing pro se, brought this action against defendant T-Mobile

USA, Inc. ("T-Mobile") in state court on January 12, 2010, seeking a total of $420,000 in

damages pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227

("TCPA"). The case was removed to federal court on February 5, 2010, and on April 14, 2010,

T-Mobile moved for an Order pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq.,

compelling the arbitration of all of Moore's claims.

       On June 10, 2010, the Honorable Sandra L. Townes referred T-Mobile's motion to

compel arbitration to this Court for a report and recommendation. Having reviewed the record in

this case, the Court respectfully recommends that the motion to compel arbitration be denied.


<u>FACTUAL BACKGROUND</u>[1]

       Defendant alleges that on August 27, 2008, plaintiff visited Mobile 4U, an authorized T-

---

[1]Plaintiff has not provided a detailed set of factual allegations either in the Complaint or
in response to the current motion, although he has alleged additional facts in his motion for
contempt. For the purposes of this motion to compel arbitration, all facts are taken from
defendant's moving papers unless otherwise noted. Where plaintiff has disputed material facts,
the Court has discussed the dispute.

Mobile dealer, and entered into a 12-month contract with T-Mobile (the "Service Agreement"). (Abadi Decl.[2] ¶¶ 2-3). According to defendant, plaintiff signed the Service Agreement as required by T-Mobile and store policy, and his account was activated. (Id. ¶ 5). Plaintiff disputes that he ever signed any agreement with T-Mobile.[3] (Opp. ¶ 20).

Under the Service Agreement, Moore was required to pay a monthly rate of $39.99 per month, which Moore would pay after he used the services. (Abadi Decl.[4] ¶¶ 2-3). The Service Agreement further contained a notice in all capital letters that the agreement "REQUIRES MANDATORY ARBITRATION OF DISPUTES UNLESS . . . I OPT OUT OF THE ARBITRATION PROCEDURES . . . WITHIN 30-DAYS FROM THE DATE OF ACTIVATION." (Baca Decl.[5] ¶ 9). The information from the Service Agreement was entered into an online account activation system used by T-Mobile dealers and submitted to T-Mobile. (Id. ¶ 8). A hard copy of that agreement, which allegedly includes Moore's signature, was not kept by either T-Mobile or Mobile 4U. (Id.)

After signing the Service Agreement, Moore received his T-Mobile handset, which was

---

[2]Citations to "Abadi Decl." refer to the Declaration of Alex Abadi, filed on August 4, 2010.

[3]Plaintiff claims that defendant's allegations that he signed an agreement indicate that defendant's attorneys "adopted the practice of fraud." (Opp. ¶ 67). Plaintiff writes that "[t]he tactics to repeat again and again lies until somebody might think that they are true was invented by another expert of fraud in the Second World War, and Defendant intentionally or unintentionally does the same." (Id. ¶ 68).

[4]Citations to "Abadi Decl." refer to the Declaration of Alex Abadi, filed on August 4, 2010.

[5]Citations to "Baca Decl." refer to the Declaration of Andrea M. Baca, a paralegal employed by T-Mobile, filed on April 14, 2010.

packaged in a box with a seal "affixed adjacent to the box's sole opening." (Id.) The sticker

read:

> IMPORTANT
> Read the enclosed T-Mobile Terms & Conditions.  By using T-Mobile service, you agree
> to be bound by the Terms & Conditions, including the mandatory arbitration and early
> termination fee provisions.

(Id.) According to T-Mobile, Moore would have had to break the seal in order to open the box.

(Baca Decl. ¶ 4).

Plaintiff disputes defendant's version of events, alleging that: "I purchased a cell phone

service and have not broken any boxes, I received the phone and the service . . . ready to make

calls and I have not seen any boxes, and I have not seen that the store attendant has broken any

seals either . . . ." (Contempt Pet.[6] ¶ 5).

The document, entitled "Terms & Conditions," that was mentioned on the sticker was

included in the box containing the T-Mobile handset. (Baca Decl. ¶ 4).  Section 1 of the Terms

& Conditions stated:

> YOUR AGREEMENT WITH T-MOBILE STARTS WHEN YOU ACCEPT.  You
> accept by . . . (a) giving us a written or electronic signature, or telling us orally that you
> accept; (b) activating service; (c) using your Service after you make a change or addition;
> [or] (d) paying for the Service or Device . . . . IF YOU DON'T WANT TO ACCEPT,
> DON'T DO ANY OF THESE THINGS.

(Id. ¶¶ 5-6).  Section 2 stated that, subject to some exceptions, "ANY AND ALL CLAIMS OR

DISPUTES BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING

THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY

---

[6]Citations to "Contempt Pet." refer to plaintiff's Petition for Contempt of Court, filed on
June 14, 2010.  Although these factual allegations were not included in plaintiff's opposition to
the present motion to compel, the Court has reviewed these papers in its analysis of the parties'
factual disputes.

BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER
THAN IN COURT." (Id. ¶ 7). The Terms & Conditions allowed signatories to the agreement to
pursue their claims in court if they opted out of the mandatory arbitration clause within 30 days
of activation of service either by letter or contacting the provided telephone number or internet
address. (Id.) T-Mobile maintains a database of all customers who have opted out of the
arbitration procedures, and it has no record of Moore opting out. (Id. ¶ 16). Plaintiff does not
claim that he opted out of the mandatory arbitration clause.

   Plaintiff filed his Complaint in state court, claiming that after he ended his relationship
with T-Mobile, defendant repeatedly called him seeking approximately $60 in past-due charges,
which plaintiff describes as a "bogus debt." (Opp. ¶ 47). Plaintiff claims that defendant made
280 "harassing phone calls," which entitles him to $420,000 in damages under the TCPA. (Id.)

   Plaintiff raises five distinct arguments in opposition to the instant motion to compel
arbitration under the Service Agreement. First, plaintiff argues that this Court lacks jurisdiction
because "a case that alleges a violation of the . . . Telephone Consumer Protection Act of 1991 . .
. is in the exclusive jurisdiction of the state courts . . . ." (Opp.[7] ¶ 3). Second, plaintiff alleges
that the mandatory arbitration clause is unenforceable "absent a valid signed agreement to
arbitrate." (Id. ¶ 70). Third, plaintiff asserts that T-Mobile waived its right to compel arbitration
when it failed to "request to arbitrate on the first opportunity to do so when [it] appeared in the
state court and agreed to litigate the matter in the state court." (Id. ¶ 10).[8] Fourth, plaintiff

---

   [7]Citations to "Opp." refer to plaintiff's Affirmation in Opposition, filed on April 20,
2010.

   [8]Given that the Court recommends that the issue of the existence of any agreement
between the parties be decided first, the Court has not addressed plaintiff's other challenges to

claims that the Service Agreement is an unenforceable "adhesion agreement," and therefore the mandatory arbitration clause is unenforceable. (Id. ¶ 21). Fifth, plaintiff asserts that his claims against T-Mobile are outside the scope of the arbitration clause because the Service Agreement "is a contract for a period of service[;] once the service is discontinued, the service agreement and all it[s] clauses including the arbitration goes with it." (Id. ¶ 63).

DISCUSSION

A. Jurisdiction

Although plaintiff is technically correct when he suggests that jurisdiction to hear claims under the TCPA is vested in the state courts, see Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd., 156 F.3d 432 (2d Cir. 1998), the Second Circuit has held that nothing in the TCPA divests federal courts of diversity jurisdiction to hear private causes of action under the TCPA when the parties are otherwise subject to the diversity provisions of 28 U.S.C. § 1332. Gottlieb v. Carnival Corp., 436 F.3d 335, 336 (2d Cir. 2006). For a federal court to have diversity jurisdiction over a case, the parties must be completely diverse, and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332.

Here, T-Mobile is a company incorporated in Delaware, with its principal place of business in the state of Washington, and Moore is a citizen of New York. (Notice of Removal ¶ 7). Plaintiff seeks $420,000, well in excess of the statutory minimum for diversity jurisdiction. Accordingly, this Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332.

─────────────

the arbitration agreement.

B. <u>Enforcement of Arbitration Clause - Legal Standard</u>

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, <u>et seq.</u>, establishes a "federal policy

favoring arbitration," requiring federal courts to "rigorously enforce agreements to arbitrate."

<u>Shearson/American Exp., Inc. v. McMahon</u>, 482 U.S. 220, 226 (1987) (internal citations

omitted).  This policy does not require courts to favor arbitration only with respect to state law or

common law claims; the "duty to enforce arbitration agreements is not diminished when a party

bound by an agreement raises a claim founded on statutory rights."  <u>Id.</u>  Although the

enforceability of arbitration agreements in certain statutory regimes may be abrogated by

Congress, "[t]he burden is on the party opposing arbitration . . . to show that Congress intended

to preclude a waiver of judicial remedies for the statutory rights at issue."  <u>Id.</u> at 227.  Failing

that, the FAA allows courts to preclude enforcement "upon such grounds as exist at law or in

equity for the revocation of any contract."  9 U.S.C. § 2.

The question of who has the authority to decide whether to enforce an arbitration

provision – the court or the arbitrator – has been addressed in several Supreme Court decisions.

<u>See, e.g.</u>, <u>Rent-A-Center, West, Inc. v. Jackson</u>, 130 S. Ct. 2772, 2778 (2010); <u>Buckeye Check</u>

<u>Cashing, Inc. v. Cardegna</u>, 546 U.S. 440 (2006).   Under Section 2 of the FAA, there are two

types of challenges: one "challenges the validity of the agreement to arbitrate" and "[t]he other

challenges the contract as a whole," including challenges based on the ground that the entire

contract is invalid.  <u>Rent-A-Center, West, Inc. v. Jackson</u>, 130 S. Ct. at 2778.  Where the

challenge is to the arbitration clause itself, the Court has held that the arbitration clause is

severable from the remainder of the contract so that even if a party challenges another provision

of the contract that might render the entire contract unenforceable, the court may still enforce the

6

agreement to arbitrate. <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. at 445 (holding "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract").

The Court has also long recognized that parties may agree to submit so-called "gateway" issues of arbitrability to arbitrators rather than district courts. <u>See, e.g., Rent-A-Center, West, Inc. v. Jackson</u>, 130 S. Ct. at 2778. Thus, the question of whether the parties have agreed to arbitrate a specific controversy or even agreed to arbitration at all may be delegated to the arbitrator to decide. For example, arbitration agreements may reserve to arbitrators decisions about whether parties are bound by a specific arbitration clause, <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938 (1995), or whether a claim was time-barred under the rules of the arbitrator. <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79 (2002). Such delegation clauses reflect the principle that "arbitration is a matter of contract." <u>Rent-A-Center, West, Inc. v. Jackson</u>, 130 S. Ct. at 2777 (citing <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. at 943).

In construing clauses delegating questions of arbitrability to the arbitrator, courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. at 944. This type of "gateway" determination presents a limited exception to the general policy that courts should liberally construe arbitration agreements: "The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" <u>Id.</u> at 83 (quoting <u>AT & T Technologies, Inc. v. Communications Workers</u>, 475 U.S. 643, 649 (1986) (emphasis in original)). As the Court explained in <u>First Options</u>, "the law treats silence or

7

ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement . . . .'" First Options of Chicago, Inc. v. Kaplan, 514 U.S. at 944-45.

Thus, only when a party specifically challenges the arbitration clause itself will the court determine the question of arbitrability in the face of an explicit delegation of this question to the arbitrator. Even when there is a claim that the entire contract is invalid due to unconscionability or because of fraud in the inducement, courts will not intervene unless the challenge is specifically directed to the agreement to arbitrate. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S.395,403-04 (1967). In Buckeye Check Cashing, Inc. v. Cardegna, the Court held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. 440, 445-46 (2006). Buckeye, however, was limited to disputes regarding the *validity* of a contract containing an agreement to arbitrate; the Court did not address the question raised here where there is a challenge to the very existence of the contract. Id. at 444 n.1. The Second Circuit has held that "questions about whether a contract was ever made . . . are presumptively to be decided by the court even *without* a specific challenge to the agreement to arbitrate," Telenor Mobile Communications AS v. Storm LLC, 584 F.3d 396, 406 n.5 (2d Cir. 2009), and the Supreme Court adopted this position in Granite Rock Co. v. International Brotherhood of Teamsters, 130 S. Ct. 2847 (2010). In Granite Rock, the Supreme Court ruled that "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." Id. at 2855-56.

8

C. Analysis

Plaintiff states that defendants "knew or should have known that a contract to arbitrate must be signed by both parties and absent a signature of one party[,] there is no agreement." (Opp. ¶ 62). Plaintiff finds this contention so obvious that he concludes that the attorneys for T-Mobile are "milk[ing] their client . . . to prepare papers (Frivolous papers) and they are ready to take the risk of sanctions under rule 11 for the milk of the cash cow." (Id.) In essence, plaintiff seems to challenge the actual existence of any agreement between the parties.

As defendant notes, "[i]t is a fundamental rule of contract law that the offeror . . . can specify the mode of acceptance." (Def.'s Mem.[9] at 10). Indeed, the offeror may specify a mode of acceptance other than by signature: "[t]he manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract." Leibowitz v. Cornell Univ., 584 F.3d 487, 507 (2d Cir. 2009) (quoting Maffea v. Ippolito, 247 A.D.2d 366, 668 N.Y.S.2d 653, 654 (1998)). Initiating performance under a contract is sufficient to indicate consent. See, e.g., Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427-28 (2d Cir. 2004) (holding that the "[m]anifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance") (internal citations omitted).

Here, defendant contends that plaintiff was informed by a conspicuous seal on the box containing the handset that using T-Mobile service indicated assent to the Terms & Conditions. (Baca Decl. ¶ 4). Defendant alleges that a copy of the Terms & Conditions, including the

---

[9]Citations to "Def.'s Mem." refer to defendant's Memorandum of Law in Support of its Motion to Compel Arbitration, filed on April 14, 2010.

mandatory arbitration clause, was included in the handset box.  (Id. ¶ 5).  If plaintiff broke the seal and began using T-Mobile's service, he manifested assent to the Terms & Conditions offered by T-Mobile.  Plaintiff disputes that he ever opened any boxes or broke any seals, and, therefore, never agreed to a contract with T-Mobile.

Given the Supreme Court's recent Granite Rock decision, it is clear that a dispute concerning the actual formation and existence of a contract is to be decided by the court and not an arbitrator.  Although the Supreme Court has not laid out with particularity exactly how such a determination is to be made, lower courts have held trials and submitted the factual questions to a jury.  See Granite Rock, 130 S. Ct. at 2855.

If the trier of fact were to find that plaintiff never agreed to the Service Agreement, the arbitration clause in the Terms & Conditions would not apply.  Accordingly, the Court respectfully recommends that the parties proceed to trial on the question whether a contract existed between plaintiff and T-Mobile.  The Court further recommends that discovery, if any, be limited to the issue of whether or not plaintiff entered into a contract with T-Mobile.  Since plaintiff has represented to this Court that he will not need to undertake discovery, any discovery would be limited to discovery sought by defendant.

CONCLUSION

Given that plaintiff disputes the existence of any agreement between the parties, the Court respectfully recommends that the parties proceed to an immediate trial to determine whether plaintiff entered into a contract with T-Mobile and agreed to the terms of the Service Agreement, with discovery limited to that issue.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to mail copies of this Report and Recommendation to the parties.

**SO ORDERED.**

Dated: Brooklyn, New York
        November 8, 2010

Cheryl L. Pollak
United States Magistrate Judge

11