UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                                      :
TEDDY MOORE,                                          :
                                                      :    10 CV 00527 (SLT) (CLP)
                         Plaintiff,                   :
                                                      :    **DEFENDANT T-MOBILE USA,**
          - against -                                 :    **INC.'S STATEMENT OF**
                                                      :    **UNDISPUTED FACTS**
T-MOBILE USA, INC.,                                   :    **PURSUANT TO LOCAL RULE**
                                                      :    **56.1 IN SUPPORT OF ITS**
                         Defendants.                  :    **RENEWED MOTION**
                                                      :    **PURSUANT TO RULE 56 TO**
                                                      :    **COMPEL ARBITRATION**
------------------------------------------------------------------ x

Pursuant to Rule 56.1 of the Local Rules for the U.S. District Court for the Eastern District of New York, defendant T-Mobile USA, Inc. ("T-Mobile") respectfully submits the following Statement of Undisputed Material Facts in support of its renewed motion pursuant to Rule 56 to compel arbitration:

**Moore Signed-Up for Service with T-Mobile and Entered Into a Service Agreement**

1. Mobile 4 U, Inc. ("Mobile 4 U") is an authorized T-Mobile dealer, located at 89-25 Queens Boulevard, Queens, New York 11373. (Declaration of Andrea Baca in Support of T-Mobile USA, Inc.'s Renewed Motion Pursuant to Rule 56 to Compel Arbitration, Jan. 30, 2012 ("Baca Decl."), ¶ 2.)

2. Mobile 4 U is a sub-dealer of a T-Mobile "master dealer," Midtown Cellular, Inc. ("Midtown"). (*Id.*)

3. On August 27, 2008, Moore visited Mobile 4U, where he signed up for T-Mobile service and purchased a T-Mobile cell phone. (*Id.*)

4. Moore admits that he activated T-Mobile service. (Deposition of Teddy Moore, Apr. 13, 2011 ("Moore Dep."), at 20:1-4.)[1]

5. When Moore signed up for T-Mobile service, and purchased and activated his T-Mobile phone, Moore also was required to, and did, provide T-Mobile with his name, billing address, and physical address. (Baca Decl. ¶ 4.)

6. This information, along with other details concerning Moore's handset, rate plan, and other plan features, was input into a T-Mobile form of Service Agreement (the "Service Agreement"). (*Id.*)

7. The Service Agreement is a three-page computer-generated document maintained on T-Mobile's account activation computer system. The computer system is known as the "Watson" system. (*Id.*)

8. The second page of the form of Service Agreement includes the header "IMPORANT CUSTOMER INFORMATION." (Baca Decl., Exhibit A at TMO000012.)

9. T-Mobile's policy is to provide customers with an opportunity to review the Service Agreement before they actually subscribe for T-Mobile service and activate their handsets. In accordance with this policy, T-Mobile dealers at the time were expected to print out copies of the Service Agreement for customers' review and signature. (Baca Decl. ¶ 8.)

10. During an initial conference before the Honorable Cheryl L. Pollak on March 24, 2010, Moore denied that he signed the Service Agreement or any other agreement requiring him to arbitrate his claims: "I have no signed contract agreement, such agreement doesn't exist." (Rubinstein Decl., Exhibit A at 13:15-16.)

---

[1] True and correct copies of all deposition excerpts cited herein are attached as Exhibit B to the Declaration of Jason C. Rubinstein, Feb. 1, 2012 ("Rubinstein Decl.").

  11. Moore later admitted, under oath, to signing the Service Agreement with T-Mobile. (Moore Dep. at 30:3-32:19.)

  12. At this deposition, Moore gave the following testimony about his signing the Service Agreement:

> Q. Now, Mr. Moore, before the break, we were discussing Exhibit 1 [the declaration of Alex Abadi, the store clerk who helped Moore sign up for services with T-Mobile]. Correct?
>
> A. Yes.
>
>   *  *  *
>
> A. Okay. So we have Exhibit 1. And from Exhibit 1 I go to Exhibit B [*i.e.*, the Service Agreement].
>
>   *  *  *
>
> Q. So you've seen Exhibit B in one form or another before?
>
> A. Yes. I have seen it, as I told you before. I signed it on the second page of the signature, which is called "Important Customer Information."
>
>   *  *  *
>
> A. . . . I haven't signed it in any place, except the signature on the third page after "I am of legal age," et cetera, et cetera. I signed here. I haven't entered anything for the business or for the date, as I recall. And this was the only signature . . . .
>
>   *  *  *
>
> Q. But you do recall signing this?
>
> A. Yes.

(Moore Dep. at 31:2-32:19.)

  13. In responding to questions at his deposition, Moore relied on his own, marked-up copy of the Service Agreement that he brought with him to the deposition. Moore's copy of the Service Agreement was annexed as Exhibit B to the Declaration of Alex Abadi,

3

dated July 13, 2012, which in turn was an enclosure in a letter from counsel for T-Mobile to the Honorable Cheryl L. Pollak, dated August 4, 2011.  The letter and its enclosures (including the Service Agreement) were marked as Exhibit 1 at Moore's deposition.  (Rubinstein Decl. ¶ 4; Moore Dep. at 30:3-25.)

14. T-Mobile has attempted, but been unable, to obtain a signed copy of Moore's Service Agreement from Mobile 4 U and Midtown.  (Baca Decl. ¶ 11.)

15. T-Mobile retained an unsigned, electronic copy of Moore's Service Agreement, which includes all information specific to Moore's contract, on the Watson system.  (Baca Decl. ¶ 11 & Exhibit A.)

16. The language and terms of the form of Service Agreement Moore admits to signing are identical to the form of Moore's Service Agreement maintained on the Watson system.  (Moore Dep. at 30:3-32:19; Rubinstein Decl. ¶ 4 & Exhibit C; Baca Decl., Exhibit A.)

17. Pursuant to the Service Agreement, Moore entered into a contract with a 12-month term where he would be billed for service used in the preceding month (*i.e.*, a "postpaid" rate plan).  (Baca Decl. ¶ 3.)

**The Service Agreement Mandates that Moore Arbitrate His Claims Against T-Mobile**

18. The Service Agreement provides,

> Your agreement with T-Mobile includes this document ("Service Agreement"), the T-Mobile standard Terms and Conditions, supplemental terms and conditions for other T-Mobile services, and your specific Rate Plan terms.  **Please be sure to review the full Terms and Conditions included in your device box; you can also view and print Terms and Conditions by logging into www.T-Mobile.com** . . . .

(Baca Decl. ¶ 6 & Exhibit A at TMO000012 (emphasis in original).)

19. In addition, the Service Agreement states, in all capital letters:

4

> BY SIGNING THIS FORM OR ACTIVATING OR USING T-MOBILE SERVICE I ACKNOWLEDGE AND AGREE THAT MY . . . AGREEMENT WITH T-MOBILE INCLUDES THIS SERVICE AGREEMENT, THE SEPARATE STANDARD T-MOBILE TERMS AND CONDITIONS . . . . THE T-MOBILE TERMS AND CONDITIONS ARE IN MY DEVICE BOX OR WERE OTHERWISE PROVIDED TO ME AT THE TIME OF SALE, AND ARE AVAILABLE AT WWW.T-MOBILE.COM . . . . BY SIGNING, I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ ALL OF THE ABOVE DOCUMENTS.

(Baca Decl. ¶ 7 & Exhibit A at TMO00012.)

20. The T-Mobile Terms & Conditions ("Terms and Conditions") referenced by the Service Agreement are applicable to Moore and all other customers who activated T-Mobile service in and around August 2008. (Baca Decl. ¶ 12.)

21. The Service Agreement states, in all capital letters,

> I UNDERSTAND THAT MY AGREEMENT WITH T-MOBILE AFFECTS MY AND T-MOBILE'S LEGAL RIGHTS. AMONG OTHER THINGS, IT . . . **REQUIRES MANDATORY ARBITRATION OF DISPUTES, UNLESS i) I OPT OUT OF THE ARBITRATION PROCEDURES BY CALLING 1-866-323-4405 OR COMPLETING AN OPT-OUT FORM AT www.T-Mobiledisputeresolution.com *WITHIN 30-DAYS FROM THE DATE OF ACTIVATION* (See, Section 2 of the Terms and Conditions)** . . . .

(Baca Decl. ¶ 5 & Exhibit A at TMO00012 (emphasis in original).)

22. Section 1 of the Terms and Conditions provides:

> **Acceptance. YOUR AGREEMENT WITH T-MOBILE STARTS WHEN YOU ACCEPT.** You accept by doing any of the following: (a) giving us a written or electronic signature, or telling us orally that you accept; (b) activating Service; (c) using your Service after you make a change or addition; (d) paying for the Service or Device; or (e) failing to activate Service within 30 days after the purchase of your T-Mobile Device, unless returned within the Return Period (as defined in Section 4). **IF YOU DON'T WANT TO ACCEPT, DON'T DO ANY OF THESE THINGS.**

(Baca Decl. ¶ 13 & Exhibit B § 1 (emphasis in original).)

5

    23.    Section 2 of the Terms and Conditions provides:

> **Dispute Resolution and Arbitration. WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW . . . ANY AND ALL CLAIMS OR DISPUTES BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT.** . . . We each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply (despite the choice of law provision in Section 25). THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).

(Baca Decl. ¶ 14 & Exhibit B § 2 (emphasis in original).)

    24.    Section 2 of the Terms and Conditions further provides:

> For all disputes . . . , whether pursued in court or arbitration, you must first give us an opportunity to resolve your claim by sending a written description of your claim . . . . We each agree to negotiate with each other in good faith about your claim. If we do not resolve the claim within 60 days after we receive this claim description, you may pursue your claim in arbitration. You may pursue your claim in a court only under the circumstances described below. **We each agree that** if you fail to timely pay amounts due, we may assign your account for collection . . . .

(Baca Decl., Exhibit B § 2 (emphasis in original).)

    25.    Section 2 of the Terms and Conditions further provides:

> **Notwithstanding the above, YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION** if: (a) your claim qualifies, you may initiate proceedings in small claims court; or (b) **YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE DATE YOU ACTIVATED THAT PARTICULAR LINE OF SERVICE (the "Opt Out Deadline")**. You may opt out of these arbitration procedures by calling 1-866-323-4405 or via the internet by completing the opt-out form located at **www.t-mobiledisputeresolution.com**. **Any**

6

> **opt-out received after the Opt Out Deadline will not be valid and you must pursue your claim in arbitration or small claims court.**

(Baca Decl. ¶ 14 & Exhibit B § 2 (emphasis in original).)

26. Moore never exercised his opt-out right under the Service Agreement or Terms and Conditions. (Baca Decl. ¶¶ 15-16 (emphasis in original).)

27. Section 2 of the Terms and Conditions further provides:

> **If the arbitration provision applies or you choose arbitration to resolve your disputes, then either you or we may start arbitration proceedings.** You must send a letter requesting arbitration and describing your claim to our registered agent (see Sec. 14) to begin arbitration. The American Arbitration Association (AAA) will arbitrate all disputes. For claims of less than $75,000, the AAA's Supplementary Procedures for Consumer-Related Disputes will apply; for claims over $75,000, the AAA's Commercial Arbitration Rules will apply. The AAA rules are available at **www.adr.org** or by calling 1-800-778-7879. We will pay upon filing of the arbitration demand, all filing, administration and arbitrator fees for claims that total less than $75,000. For claims that total more than $75,000, the payment of filing, administration and arbitrator fees will be governed by the AAA Commercial Arbitration Rules. An arbitrator may award on an individual basis any relief that would be available in a court, including injunctive or declaratory relief and attorneys' fees. In addition, for claims under $75,000 as to which you provided notice and negotiated in good faith as required above before initiating arbitration, if the arbitrator finds that you are the prevailing party in the arbitration, you will be entitled to a recovery of reasonable attorneys' fees and costs. Except for claims determined to be frivolous, T-Mobile agrees not to seek an award of attorneys' fees in arbitration even if an award is otherwise available under applicable law.

(Baca Decl. ¶ 14 & Exhibit B § 2 (emphasis in original).)

**Moore Cancelled His T-Mobile Service**

28. The Service Agreement and Terms and Conditions required Moore to pay and, until July 30, 2009, he did pay, monthly charges for the service he received from T-Mobile in the preceding month. (Baca Decl. ¶ 17 & Exhibit C at TMO000026.)

29. Moore made his last payment to T-Mobile on July 30, 2009, for service during the period June 25, 2009 through July 24, 2009. (Baca Decl. ¶ 18 & Exhibit C at TMO000026.)

30. After making this payment, Moore continued to use his cellular phone, and accrue airtime charges, through the end of August 2009. (Baca Decl. ¶ 19.)

31. On August 31, 2010, at the end of the 12-month term of his contract, Moore terminated his service with T-Mobile. (Baca Decl. ¶ 20 & Exhibit D at TMO000031-32; Moore Dep. at 43:14-44:11.)

32. Section 4 of the Terms and Conditions (headed, "Cancellation and Returns") provides, "You remain responsible to pay for the Service and all charges, fees and taxes incurred through the date of cancellation." (Baca Decl., Exhibit B § 4.)

33. As of the date he cancelled T-Mobile service, Moore still owed T-Mobile for services he received, including airtime used, between July 24, 2009 and August 31, 2009. T-Mobile sent Moore two more bills – one for the July 25-August 24 period, and one for the August 25-31 period. (Baca Decl. ¶ 21 & Exhibits E-F.)

34. Moore has refused to pay these bills, which total $62.28. (Baca Decl. ¶ 22.)

35. After Moore failed to pay, T-Mobile attempted to collect the past due charges. (Baca Decl. ¶ 23.)

36. Section 12 of the Terms and Conditions provides: "If we do not receive payment in full by the due date on your bill, . . . . [w]e may use a collection agency and you agree to pay collection agency fees we incur to collect payment." (Baca Decl., Exhibit B § 12.)

37. Moore disputes that he owes anything to T-Mobile, and alleges that T-Mobile made improper phone calls to collect on the debt. (Rubinstein Decl., Exhibit D.)

**Moore Sued T-Mobile**

38. Moore commenced this action, in which he seeks $420,000 in damages, by filing a 31-word Complaint in the Civil Court of the City of New York, Queens County on January 12, 2010. (Rubinstein Decl., Exhibit D.)

39. On February 2, 2010, T-Mobile answered the Complaint, denying Moore's allegations. (Rubinstein Decl., Exhibit E.)

40. At the March 24, 2010 initial conference before Magistrate Judge Pollak, Moore stated that he bases his claims on the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. (Rubinstein Decl. Ex. A at 2:14-3:15.)

41. At that conference, Magistrate Judge Pollak granted T-Mobile leave to file both an amended answer that cited Moore's agreement to arbitrate as an affirmative defense and a motion to compel the arbitration of Moore's claims. (Rubinstein Decl., Exhibit A at 12:25-14:9.)

Dated:  New York, New York
        February 1, 2012

                                                    FRIEDMAN KAPLAN SEILER &
                                                    ADELMAN LLP

                                                    _/s/ Jason Rubinstein_____
                                                    Daniel B. Rapport (drapport@fklaw.com)
                                                    Jason C. Rubinstein (jrubinstein@fklaw.com)
                                                    7 Times Square
                                                    New York, NY 10036-6516
                                                    (212) 833-1100

                                                    *Attorneys for Defendant*
                                                    *T-Mobile USA, Inc.*