UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                                                :

TEDDY MOORE,                                         :
                                                                  :

                                 Plaintiff,           :
                                                                   :         10 CV 00527 (SLT) (CLP)

                    - against -                :
                                                                   :

T-MOBILE, USA, INC.,                            :
                                                                   :

                                 Defendant.        :
                                                                       :
---------------------------------------------------------------- x


## DEFENDANT T-MOBILE USA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION <u>PURSUANT TO RULE 56 TO COMPEL ARBITRATION</u>


Daniel B. Rapport (drapport@fklaw.com)
Jason C. Rubinstein (jrubinstein@fklaw.com)
FRIEDMAN KAPLAN SEILER &
  ADELMAN LLP
7 Times Square
New York, New York 10036-6516
Telephone:  (212) 833-1100
Fax:  (212) 833-1250

February 1, 2012                                   *Attorneys for Defendant*
                                                                 *T-Mobile USA, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................................... 2

ARGUMENT ..................................................................................................................... 7

I.      MOORE AGREED TO ARBITRATE HIS CLAIMS .......................................... 8

II.     THE PARTIES' ARBITRATION AGREEMENT ENCOMPASSES MOORE'S CLAIMS ............................................................................................................ 10

III.    MOORE'S AGREEMENT TO ARBITRATE IS ENFORCEABLE .............................. 11

        A.      The Contract Is Not Procedurally Unconscionable ................................ 12

        B.      The Contract Is Not Substantively Unconscionable ................................ 14

CONCLUSION ................................................................................................................. 17

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

Cᴀsᴇs

*Alinsub v. T-Mobile USA, Inc.*,
    No. CH-05-0283-2 (Tenn. Ch. Ct., 13th Jud. Dist. May 7, 2007) ...........................................16

*Almonte v. Florio*,
    No. 02 Civ. 6722(SAS), 2004 WL 60306 (S.D.N.Y. Jan. 13, 2004).......................................7

*Anonymous v. JP Morgan Chase & Co.*,
    05 Civ. 2442 (JGK), 2005 U.S. Dist. LEXIS 26083 (S.D.N.Y. Oct. 31, 2005) ...............12, 16

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011)........................................................................................................11

*Bank of Am., N.A. v. Farley*,
    No. 00 Civ. 9346(DC), 2002 WL 5586 (S.D.N.Y. Jan. 2, 2002)...........................................9

*Bar-Ayal v. Time Warner Cable Inc.*,
    No. 03 CV 9905 (KMW), 2006 U.S. Dist. LEXIS 75972 (S.D.N.Y. Oct. 16, 2006)..............16

*Brower v. Gateway 2000, Inc.*,
    246 A.D.2d 246 (1st Dep't 1998) ........................................................................................9

*Brownstone Inv. Group, LLC v. Levey*,
    514 F. Supp. 2d 536 (S.D.N.Y. 2007).................................................................................11

*Builders Group LLC v. Qwest Commc'ns Corp.*,
    No. 07 Civ. 5464 (DAB), 2009 U.S. Dist. LEXIS 91194 (S.D.N.Y. Sept. 30, 2009) ............14

*Canada Life Assur. Co. v. The Guardian Life Ins. Co. of Am.*,
    242 F. Supp. 2d 344 (S.D.N.Y. 2003).................................................................................9

*Denney v. BDO Seidman, L.L.P.*,
    412 F.3d 58 (2d Cir. 2005).................................................................................................10

*In re Disbarment of Moore*,
    529 U.S. 1127 (2000).........................................................................................................7

*Forbes v. A.G. Edwards & Sons, Inc.*,
    No. 08 Civ. 552 (TPG), 2009 U.S. Dist. LEXIS 12894 (S.D.N.Y. Feb. 18, 2009)................12

*Gillman v. Chase Manhattan Bank, N.A.*,
    73 N.Y.2d 1 (1988) ......................................................................................................11, 12

**Page(s)**

*Hayes v. County Bank*,
    26 A.D.3d 465 (2d Dep't 2006) .........................................................................16

*Hecht v. T-Mobile USA, Inc.*,
    No. CL 03-6006 AI (Fla. Cir. Ct., 15th Jud. Cir. Nov. 10, 2004).......................9, 16

*Herzer v. T-Mobile USA, Inc.*,
    No. CJ-2005-1002 (Okla. Dist. Ct. Dec. 1, 2005) .................................................16

*Holtz v. Rockefeller & Co.*,
    258 F.3d 62 (2d Cir. 2001).....................................................................................7

*King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*,
    No. 09 Civ. 3980 (DLC), 2009 U.S. Dist. LEXIS 119934 (S.D.N.Y. Dec. 23, 2009) ...........14

*Makarowksi v. AT&T Mobility, LLC*,
    No. CV 09-1590-GAF, 2009 U.S. Dist. LEXIS 57633 (C.D. Cal. June 18, 2009) ................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..............................................................................................7

*McGinnis v. T-Mobile USA, Inc.*,
    No. C08-106Z, 2009 U.S. Dist. LEXIS 121885 (W.D. Wash. Dec. 9, 2009) .........................16

*Mitchell v. Verizon Wireless*,
    No. 05 C 511, 2006 U.S. Dist. LEXIS 15257 (N.D. Ill. Mar. 31, 2006) ................................16

*In re Moore*,
    177 F. Supp. 2d 197 (S.D.N.Y. 2001)....................................................................7

*In re Moore*,
    299 A.D.2d 38 (2d Dep't 2002) ..............................................................................7

*Moore v. City of New York*,
    No. 08-CV-2449 (RRM)(LB), 2009 U.S. Dist. LEXIS 64826 (E.D.N.Y. July 28,
    2009) ......................................................................................................................7

*Moore v. Microsoft Corp.*,
    293 A.D.2d 587 (2d Dep't 2002) ......................................................................9, 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)...................................................................................................8

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009)...............................................................12, 14

iii

**Page(s)**

*Nichols v. Wash. Mut. Bank*,
  07-CV-3216(JG)(VVP), 2007 U.S. Dist. LEXIS 85936 (E.D.N.Y. Nov. 21, 2007)...............14

*Novak v. Overture Servs., Inc.*,
  309 F. Supp. 2d 446 (E.D.N.Y. 2004) ..................................................................13

*Osborne v. Fernandez*,
  No. 06-CV-4127 (CS)(LMS), 2009 WL 884697 (S.D.N.Y. Mar. 31, 2009)............................7

*Ozormoor v. T-Mobile, USA, Inc.*,
  No. 08-2596, 2009 U.S. App. LEXIS 26539 (6th Cir. Dec. 3, 2009)....................................16

*Pfeffer v. Voicestream Wireless Corp.*,
  No. 03-10541 (Fla. Cir. Ct., 13th Jud. Cir. Sept. 28, 2004)....................................16

*Reid v. Supershuttle Int'l, Inc.*,
  No. 08-CV-4854 (JG) (VVP), 2010 U.S. Dist. LEXIS 26831 (E.D.N.Y. Mar. 22,
  2010) ..................................................................................................15

*Rhodall v. Verizon Wireless of the East, L.P.*,
  No. 1:10-3195-MBS, 2011 WL 4036418 (D.S.C. Sept. 9, 2011)........................................8, 16

*Rochester Home Equity, Inc. v. Guenette*,
  6 A.D.3d 1119 (4th Dep't 2004) ......................................................................8

*Sablosky v. Edward S. Gordon Co.*,
  73 N.Y.2d 133 (1989) ................................................................................14

*Scotto v. Almenas*,
  143 F.3d 105 (2d Cir. 1998)..........................................................................7

*Shearson/American Express, Inc. v. McMahon*,
  482 U.S. 220 (1987)..................................................................................8

*Stewart v. Paul, Hastings, Janofsky & Walker, LLP*,
  201 F. Supp. 2d 291 (S.D.N.Y. 2002).................................................................15

*Storm LLC v. Telenor Mobile Commc'ns AS*,
  No. 06 Civ. 13157 (GEL), 2006 U.S. Dist. LEXIS 90978 (S.D.N.Y. Dec. 15, 2006) ...........15

*Tsadilas v. Providian Nat'l Bank*,
  13 A.D.3d 190 (1st Dep't 2004) ......................................................................13

*Universal Grading Serv. v. eBay, Inc.*,
  No. 08-CV-3557 (CPS), 2009 U.S. Dist. LEXIS 49841 (E.D.N.Y. June 10, 2009) ...............13

**Page(s)**

**STATUTES & RULES**

9 U.S.C. § 1 .................................................................................................................1

9 U.S.C. § 2 ............................................................................................................8, 11

FED. R. CIV. P. 56(a) ................................................................................................7


**OTHER AUTHORITIES**

Commercial Arbitration Rules R-43 ...........................................................................15

Federal Communications Commission, *Annual Report and Analysis of
    Competitive Market Conditions with Respect to Commercial Mobile
    Services: Fifteenth Report* (2011) ........................................................................13

18-131 MOORE'S FEDERAL PRACTICE – CIVIL § 131.13 ...........................................10

Defendant T-Mobile USA, Inc. ("T-Mobile") respectfully submits this memorandum of law in support of its renewed motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to dismiss the claims asserted by plaintiff Teddy Moore ("Moore"), and compel their arbitration in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), and the unambiguous terms of Moore's Service Agreement.

## PRELIMINARY STATEMENT

When T-Mobile initially moved to compel the arbitration of Moore's claims in April 2010, it was unable to locate a signed copy of Moore's Service Agreement.  Moore exploited this gap in the record, denying both in open court and in numerous filings that he had ever signed the Service Agreement or formed any agreement to arbitrate.  On the basis of Moore's denial, this Court concluded that a genuine dispute of material fact existed as to whether Moore agreed to arbitrate his claims, and that a trial should be held on this single question, preceded by discovery limited to that subject.

T-Mobile deposed Moore in April 2011.  His deposition testimony flatly contradicts his previous representations to this Court, and dispels any doubt about whether he agreed to arbitrate his claims.  The Service Agreement provides that "SIGNING . . . OR ACTIVATING OR USING T-MOBILE SERVICE" constitutes acceptance of its terms.  At his deposition, ***Moore admitted under oath*** that, when he purchased his T-Mobile mobile phone, he signed a Service Agreement.  And it has long been undisputed that Moore activated and used T-Mobile service.  Thus, Moore assented to the Service Agreement.

That agreement "**REQUIRES MANDATORY ARBITRATION OF DISPUTES**," unless Moore were to opt-out.  (Emphasis in original.)  Moore never opted out. Accordingly, there can be no legitimate dispute that Moore formed a binding agreement to

arbitrate, and T-Mobile's renewed motion, pursuant to Rule 56, to compel arbitration should therefore be granted.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

### Moore Signs Up for T-Mobile Service and Signs a Service Agreement

On August 27, 2008, Moore signed up for T-Mobile service and purchased a T-Mobile cell phone at Mobile 4 U, Inc., a T-Mobile dealer.  (56.1 ¶¶ 1-4.)  Moore admits that he signed a three-page document (*id.* ¶¶ 5-7, 11-12), which he now claims is merely a notification called "Important Customer Information."  (Dkt. No. 66 ¶ 2.)  Regardless of what Moore calls it, this document was, in fact, his Service Agreement with T-Mobile.  (56.1 ¶¶ 8, 16.)  The Service Agreement informed Moore that, "BY SIGNING THIS FORM OR ACTIVATING OR USING T-MOBILE SERVICE," he agreed to be bound by its terms.  (*Id.* ¶ 19.)

The Service Agreement expressly provides that any disputes arising out of or relating to the agreement are subject to arbitration.  It states, in all capital letters, that Moore agrees and acknowledges that his "AGREEMENT WITH T-MOBILE AFFECTS MY . . . RIGHTS.  AMONG OTHER THINGS IT . . . **REQUIRES MANDATORY ARBITRATION OF DISPUTES, UNLESS i) I OPT OUT OF THE ARBITRATION PROCEDURES** . . . ." (*Id.* ¶ 21 (emphasis in original).)

In addition, the Service Agreement expressly incorporates by reference T-Mobile's standard Terms and Conditions (the "Terms and Conditions").  Specifically, Moore

---

[1]  The complete statement of material facts relevant to this motion is set forth in T-Mobile's accompanying Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 in Support of its Renewed Motion Pursuant to Rule 56 to Compel Arbitration ("56.1"), which refers to various exhibits attached to the accompanying Declarations of Andrea Baca and Jason C. Rubinstein.  The 56.1 is incorporated by reference herein in its entirety.  Undefined and abbreviated terms used herein have the same meaning as in the 56.1.  References to "56.1 ¶ _" herein are to paragraphs in the 56.1.

acknowledged and agreed that (i) "MY . . . AGREEMENT WITH T-MOBILE INCLUDES . . .

THE SEPARATE STANDARD TERMS AND CONDITIONS," (ii) the Terms and Conditions

were provided to him at the time, and (iii) the Terms and Conditions were available over the

internet.  Moore also acknowledged reading both the Service Agreement and the Terms and

Conditions.[2]  (*Id.* ¶ 19; *see also id.* ¶ 18.)  The Terms and Conditions make clear that any

disputes arising out of or related to the Service Agreement (including the Terms and Conditions)

or Moore's receipt of wireless service – including the claims at issue herein – are subject to

arbitration.  On the first page and in all capital letters, they provide:

> **WE EACH AGREE THAT . . . ANY AND ALL CLAIMS OR
> DISPUTES BETWEEN YOU AND US IN ANY WAY
> RELATED TO OR CONCERNING THE AGREEMENT,
> OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING
> ANY BILLING DISPUTES, WILL BE RESOLVED BY
> BINDING ARBITRATION, RATHER THAN IN COURT**. . . .
> We each also agree . . . that the Federal Arbitration Act and federal
> arbitration law apply . . . .

(*Id.* ¶ 23 (emphasis in original).)

The Service Agreement expressly advises customers that, after their activation of

T-Mobile service, they may opt out of the arbitration procedures by calling a toll-free number or

completing an opt-out form online.  (*Id.* ¶ 21.)  It provides, in all capital letters:

> I UNDERSTAND THAT MY AGREEMENT WITH T-MOBILE
> . . . **REQUIRES MANDATORY ARBITRATION OF
> DISPUTES, UNLESS i) I OPT OUT OF THE ARBITRATION
> PROCEDURES BY CALLING 1-866-323-4405 OR
> COMPLETING AND OPT-OUT FORM AT www.T-
> Mobiledisputeresolution.com *WITHIN 30-DAYS FROM THE
> DATE OF ACTIVATION* (See, Section 2 of the Terms and
> Conditions)** . . . .

---

[2]  Except for purposes of calling specific provisions of the Terms and Conditions to the Court's attention, T-Mobile refers to the parties' agreement, including the Terms and Conditions, as the "Service Agreement."

3

(*Id.* ¶ 21 (emphasis in original).)  The Terms and Conditions include a parallel opt-out provision.

(*Id.* ¶ 25.)  Moore never exercised this opt-out right.  (*Id.* ¶ 26.)

The Terms and Conditions specify the AAA as the forum for the resolution of all disputes encompassed by the Service Agreement's arbitration provision.  They also identify the AAA procedures applicable to any given dispute, and provide for the allocation of costs between T-Mobile and any customer asserting a claim against it:

> **If the arbitration provision applies . . . either you or we may start arbitration proceedings**.  . . .  The American Arbitration Association (AAA) will arbitrate all disputes.  For claims of less than $75,000, the AAA's Supplementary Procedures for Consumer Related Disputes will apply; for claims over $75,000, the AAA's Commercial Arbitration Rules will apply.  . . .  We will pay upon filing of the arbitration demand, all filing, administration and arbitrator fees for claims that total less than $75,000.  For claims that total more than $75,000, the payment of filing, administration and arbitrator fees will be governed by the AAA Commercial Arbitration Rules.  . . .  In addition, for claims under $75,000 as to which you provided notice and negotiated in good faith . . . before initiating arbitration, if the arbitrator finds that you are the prevailing party in the arbitration, you will be entitled to a recovery of reasonable attorneys' fees and costs.

(*Id.* ¶ 27 (emphasis in original).)  The Terms and Conditions make clear that, for claims under $75,000 where customers provide T-Mobile with notice of their claims and "negotiated in good faith . . . before initiating arbitration," T-Mobile will pay:  (i) all filing, administrative and arbitrator fees; and (ii) the "reasonable attorneys' fees and costs" for prevailing customers.  (*Id.*)

**Moore Cancels, T-Mobile Attempts to Collect Moore's Unpaid Balance, and Moore Sues**

On August 31, 2010, at the end of the 12-month term of his contract, Moore terminated his service with T-Mobile.  (*Id.* ¶ 31.)  As of his termination Moore still owed T-Mobile for services he received, including airtime used, between July 24, 2009 and August 31, 2009.  T-Mobile sent Moore two more bills for this period, which he refused to pay, totaling

$62.28.  (*Id.* ¶¶ 33-34.)  After Moore failed to pay, T-Mobile attempt to collect the past-due

charges.  Moore disputes that he owes anything to T-Mobile and alleges that T-Mobile made

improper phone calls to collect on the debt.  (*Id.* ¶¶ 35, 37.)  Based on this alleged grievance,

Moore filed this action in the Civil Court of the City of New York, Queens County on January

12, 2010, asserting violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. §

227 ("TCPA"), and seeking $420,000 in damages.  (*Id.* ¶¶ 38, 40; Dkt. No. 16 ¶¶ 4, 6.)

**Based Solely on Moore's Denial that He Signed the Service**
**Agreement, this Court Declined to Compel the Arbitration of Moore's Claims**

   On February 2, 2010, T-Mobile answered the Complaint, denying Moore's

allegations (56.1 ¶ 39), and on February 5, 2010 it removed this action to this Court on diversity

grounds.  (Dkt. No. 1.)  During an initial conference on March 24, 2010, Magistrate Judge Pollak

granted T-Mobile leave to file both an amended answer that cited Moore's agreement to arbitrate

as an affirmative defense and a motion to compel the arbitration of Moore's claims.  (56.1 ¶ 41;

*see also* Dkt. No. 10.)  At that conference, Moore insisted that he had not formed an agreement

to arbitrate:  "*I have no signed contract* agreement, such agreement doesn't exist."  (56.1 ¶ 10

(emphasis added).)  T-Mobile filed its amended answer on March 31, 2010, and moved to

compel arbitration on April 14, 2010.  (Dkt. Nos. 11, 13-15.)  In opposing T-Mobile's motion,

Moore again claimed that he had no obligation to arbitrate:  "I have no such agreement, because *I

have not signed such agreement*."  (Dkt. No. 16 ¶ 20 (emphasis added).)

   On November 8, 2010, Magistrate Judge Pollak issued a Report and

Recommendation, in which she recommended that T-Mobile's motion be denied on the grounds

that "plaintiff disputes the existence of any agreement between the parties."  (Dkt. No. 31 at 11.)

Magistrate Judge Pollak further recommended that the parties "proceed to an immediate trial to

determine whether Moore entered into a contract with T-Mobile and agreed to the terms of the

Service Agreement, with discovery limited to that issue." (*Id.*)  This Court adopted the Report

and Recommendation on February 11, 2011.  (Dkt. No. 35 at 12.)

**Moore Admitted at His Deposition that He Signed the Service Agreement.**

T-Mobile deposed Moore on April 13, 2011.  In responding to questions, Moore

relied on a copy of the Service Agreement that he brought to the deposition (and which had been

an exhibit to T-Mobile's initial motion to compel).  (56.1 ¶ 13.)  *Under oath, Moore jettisoned*

*his past denials, and repeatedly admitted that he had signed that document:*

> Q.  Now, Mr. Moore, before the break, we were discussing Exhibit
> 1 [the Declaration of Alex Abadi, the store clerk who helped
> Moore sign up for services with T-Mobile].   Correct?
>
> A.  Yes.
>
> *       *       *
>
> A.  Okay.  So we have Exhibit 1.  And from Exhibit 1 I go to
> Exhibit B [*i.e.*, the Service Agreement, annexed as an exhibit to the
> Abadi Declaration].
>
> *       *       *
>
> Q.  So you've seen Exhibit B in one form or another before?
>
> A. Yes.  I have seen it, as I told you before.  ***I signed it on the***
> ***second page*** of the signature, which is called "Important Customer
> Information."
>
> *       *       *
>
> A.  . . . I haven't signed it in any place, except the signature on the
> third page after "I am of legal age," et cetera, et cetera.  ***I signed***
> ***here***.  I haven't entered anything for the business or for the date, as
> I recall.  And this was the only signature . . . .
>
> *       *       *
>
> ***Q.  But you do recall signing this?***

6

>    **A.  Yes.**

(*Id.* ¶¶ 11-12 (emphasis added).)

## <u>ARGUMENT</u>

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  If the movant establishes a prima facie basis for summary judgment, the burden shifts to the party opposing summary judgment, who "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).  "The non-moving party may not rely on conclusory allegations or unsubstantiated speculation" to create a genuine issue of material fact.  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

Moore's "pro se status does not" exempt him from these standards or "allow him to rely on conclusory allegations or unsubstantiated speculation."  *Almonte v. Florio*, No. 02 Civ. 6722(SAS), 2004 WL 60306, at *3 n.10 (S.D.N.Y. Jan. 13, 2004).  Indeed, because Moore is a disbarred lawyer,[3] he is not entitled to have his assertions held to the less stringent standard generally applied to pro se plaintiffs on Rule 56 motions.[4]

---

[3]  *See Moore v. City of New York*, No. 08-CV-2449 (RRM)(LB), 2009 U.S. Dist. LEXIS 64826, at *2 n.1 (E.D.N.Y. July 28, 2009); *see also In re Disbarment of Moore*, 529 U.S. 1127 (2000); *In re Moore*, 177 F. Supp. 2d 197 (S.D.N.Y. 2001); *In re Moore*, 299 A.D.2d 38 (2d Dep't 2002).

[4]  *See Osborne v. Fernandez*, No. 06-CV-4127 (CS)(LMS), 2009 WL 884697, at *13 (S.D.N.Y. Mar. 31, 2009) ("lenient pro se standard" was "not warranted" in evaluating former lawyer's assertions in opposition to motion for summary judgment); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) ("[P]ro se attorneys . . . typically 'cannot claim the special consideration which the courts customarily grant to pro se parties.'").

# I.

## MOORE AGREED TO ARBITRATE HIS CLAIMS

Section 2 of the Federal Arbitration Act (the "FAA") provides that:

> A written provision in . . . a contract evidencing a transaction
> involving commerce to settle by arbitration a controversy
> thereafter arising out of such contract or transaction . . . shall be
> valid, irrevocable, and enforceable, save upon such grounds as
> exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  As the Supreme Court has held, "Section 2 is a congressional declaration of a

liberal federal policy favoring arbitration agreements . . . ."  *Moses H. Cone Mem'l Hosp. v.

Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  In enacting the FAA, Congress established a

federal policy favoring arbitration agreements, which requires courts to "rigorously enforce

agreements to arbitrate."  *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226

(1987) (citation omitted).[5]

Here, there is no uncertainty about whether Moore formed an agreement with

T-Mobile requiring him to arbitrate his claims.  It is a bedrock rule of contract law that the

offeror (T-Mobile) can specify the mode of acceptance.  *See Rochester Home Equity, Inc. v.

Guenette*, 6 A.D.3d 1119, 1120 (4th Dep't 2004).  The Service Agreement clearly provided that

if he (i) signed that agreement *or* (ii) activated T-Mobile service, Moore agreed to be bound by

the Service Agreement (including the Terms and Conditions).  (56.1 ¶¶ 19, 22.)  Moore has

admitted, under oath, to both signing the Service Agreement *and* activating T-Mobile service.

---

[5]  The Service Agreement unquestionably "involve[es] commerce," *i.e.*, it is subject to federal regulation under the
Commerce Clause.  (56.1 ¶ 23 ("We each . . . agree that the Agreement affects interstate commerce . . . .").)  Moore
received nationwide mobile service under the Service Agreement, and "it is well settled that telephones, including
cellular phones, are instrumentalities of interstate commerce."  *Rhodall v. Verizon Wireless of the East, L.P.*, No.
1:10-3195-MBS, 2011 WL 4036418, at *2 (D.S.C. Sept. 9, 2011).

(*Id.* ¶¶ 4, 11-12.)  Given his testimony, there can be no dispute that Moore formed a binding agreement to arbitrate, and any attempt by Moore to manufacture such a dispute should rejected.[6]

Indeed, even if he had not signed it, Moore's activation of T-Mobile service constituted assent to the Service Agreement.  (56.1 ¶¶ 19, 22.)  New York courts routinely enforce contracts formed where, as here, customers use services or retain goods after being put on notice that they were agreeing to be contractually bound.[7]  Moore has first-hand knowledge of this mode of contract formation.  In 2002, a New York court concluded that Moore was contractually bound when he downloaded software after being notified that, by doing so, he was entering into a contract.[8]  In this case, there can be no dispute that Moore was put on notice that he was agreeing to be bound when he activated and used T-Mobile service.  Nor is there any dispute that Moore (i) had an opportunity to cancel service without penalty or opt out of the arbitration agreement, (ii) made regular monthly payments, and (iii) eventually cancelled his service – all in accordance with the provisions of the Service Agreement.

---

[6]  In particular, Moore cannot create a dispute about whether he signed the Service Agreement by submitting a declaration contradicting his deposition testimony.  "[A] party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."  *Bank of Am., N.A. v. Farley*, No. 00 Civ. 9346(DC), 2002 WL 5586, at *4 (S.D.N.Y. Jan. 2, 2002); *see also Canada Life Assur. Co. v. The Guardian Life Ins. Co. of Am.*, 242 F. Supp. 2d 344, 354-55 (S.D.N.Y. 2003) (no need for a trial to determine the existence of an arbitration agreement where the party opposing arbitration submitted only conclusory affidavits denying existence of agreement and failed to "substantiate a lack of mutual assent").

[7]  *See, e.g.*, *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 250-51 (1st Dep't 1998) (enforcing "Standard Terms and Conditions Agreement" contained in software package where the "terms of the EULA were prominently displayed" on his "computer screen before the software could be installed," and Moore was asked "to indicate assent . . . by clicking on the 'I agree' icon before proceeding with the download"); *see also Hecht v. T-Mobile USA, Inc.*, No. CL 03-6006 AI (Fla. Cir. Ct., 15th Jud. Cir. Nov. 10, 2004) (annexed as Appendix A) (enforcing arbitration clause where customer used T-Mobile service after receiving the Terms and Conditions in his handset box, which could only be opened by breaking a seal stating that use of T-Mobile service constituted an agreement to arbitrate).

[8]  *See Teddy Moore v. Microsoft Corp.*, 293 A.D.2d 587, 587 (2d Dep't 2002) (Moore was bound by End-User License Agreement ("EULA") contained in software package where the "terms of the EULA were prominently displayed" on his "computer screen before the software could be installed," and Moore was asked "to indicate assent . . . by clicking on the 'I agree' icon before proceeding with the download"); *see also Hecht v. T-Mobile USA, Inc.*, No. CL 03-6006 AI (Fla. Cir. Ct., 15th Jud. Cir. Nov. 10, 2004) (annexed as Appendix A) (enforcing arbitration clause where customer used T-Mobile service after receiving the Terms and Conditions in his handset box, which could only be opened by breaking a seal stating that use of T-Mobile service constituted an agreement to arbitrate).

Accordingly, the evidence conclusively establishes that Moore agreed to arbitrate his claims against T-Mobile.

## II.

## THE PARTIES' ARBITRATION AGREEMENT ENCOMPASSES MOORE'S CLAIMS

This Court has already ruled that the arbitration provision set forth in the Service Agreement encompasses Moore's claims under the TCPA.  (Dkt. No. 35 at 6.)  This ruling is law of the case,[9] and there is no reason for the Court to revisit it.

Moore's claims fall squarely within the scope of the arbitration provision, which encompasses all disputes related to or concerning Moore's agreement with T-Mobile, including any billing disputes:  "WE EACH AGREE THAT . . . ANY AND ALL CLAIMS OR DISPUTES BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, . . . *INCLUDING ANY BILLING DISPUTES*, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT."  (56.1 ¶ 23 (emphasis added).)  Moore alleges that T-Mobile improperly attempted to collect on a debt that T-Mobile asserts is due under the Service Agreement.  This is unquestionably a dispute "relating to" and "concerning" the Service Agreement that should be resolved by arbitration.

Further, if there were any doubts about whether the arbitration agreement encompasses Moore's claim, the law of this Circuit establishes a strong presumption that such doubts be resolved in favor of arbitration.  *See Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 68-69 (2d Cir. 2005) ("'[D]oubts as to whether a claim falls within the scope of [the] agreement should be resolved in favor of arbitrability.'  . . . [I]f an arbitration provision is broad . . . a

---

[9]  *See* 18-131 MOORE'S FED. PRAC. – CIV. § 131.13 ("The law of the case doctrine requires that when a court decides upon a rule of law, that court . . . should continue to abide by that determination during the pendency of that case.").

presumption of arbitrability attaches . . . .'") (citations omitted); *Brownstone Inv. Group, LLC v. Levey*, 514 F. Supp. 2d 536, 540 (S.D.N.Y. 2007) (recognizing a "strong presumption in favor of arbitration" that "compels that any doubts be resolved in favor of arbitration") (citations omitted).  Here, there is no doubt that Moore's agreement requires the arbitration of his claims.

### III.

### MOORE'S AGREEMENT TO ARBITRATE IS ENFORCEABLE

The FAA permits a court to invalidate an arbitration provision only when grounds exist to invalidate the contract generally.  *See* 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (noting that the "saving clause" of section 2 of the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue").

Moore has argued that his arbitration agreement is unconscionable.  (Dkt. No. 66 ¶ 14.)  In New York, "[a] determination of unconscionability generally requires a showing that the contract was *both* procedurally *and* substantively unconscionable when made – *i.e.*, some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988) (internal punctuation omitted; emphasis added).

The procedural element of unconscionability "requires an examination of the contract formation process and the alleged lack of meaningful choice," focusing on such factors as the "size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the

11

party claiming unconscionability, and whether there was disparity in bargaining power."

*Gillman*, 73 N.Y.2d at 10-11 (citations omitted).

The substantive element of unconscionability "looks to the content of the contract, per se." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (internal punctuation omitted); *see also Forbes v. A.G. Edwards & Sons, Inc.*, No. 08 Civ. 552 (TPG), 2009 U.S. Dist. LEXIS 12894, at *14 (S.D.N.Y. Feb. 18, 2009) ("[T]he general standard for substantive unconscionability is 'whether one or more key terms are unreasonably favorable to one party.'").

As a matter of New York law, there is no basis for Moore to claim that the Service Agreement is either procedurally or substantively unconscionable.

## A.      The Contract Is Not Procedurally Unconscionable

Moore cannot show procedural unconscionability just by alleging that the Service Agreement is a standard form.  Courts routinely enforce standard form contracts for consumer goods and services – because they are recognized as a cost-effective, efficient way to conduct business with millions of diverse customers.  Indeed, Moore himself has experience with such contracts.  *See Teddy Moore v. Microsoft Corp.*, 293 A.D.2d 587 (2d Dep't 2002).  Nor is this a situation where the arbitration clause was buried in the fine print.  T-Mobile prominently and repeatedly notified Moore that he was agreeing to arbitrate.  (56.1 ¶¶ 21, 23-25, 27.)

Rather, to show procedural unconscionability, Moore must prove that, to obtain wireless communications service, he had no realistic alternative but to accept the Service Agreement's arbitration provision.  *See Anonymous v. JP Morgan Chase & Co.*, 05 Civ. 2442 (JGK), 2005 U.S. Dist. LEXIS 26083, at *17 (S.D.N.Y. Oct. 31, 2005) (arbitration clause in standard credit card member agreement, "offered on a take-it-or-leave-it basis," was not

procedurally unconscionable "particularly when the plaintiff had the ability to go to other

sources of credit").[10]   Moore cannot meet this burden.

        As the Federal Communications Commission has observed, the U.S. wireless

service market is competitive; consumers in any given market are able to choose from a variety

of wireless carriers.  *See Annual Report and Analysis of Competitive Market Conditions with*

*Respect to Commercial Mobile Services: Fifteenth Report* (2011), ¶ 44 ("FCC Fifteenth Report")

(http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-11-103A1.pdf (last accessed Jan. 30,

2012).[11]   Because Moore could have selected from any one of several service providers, there is

no basis upon which to conclude that the arbitration provision in the parties' agreement is

procedurally unconscionable.

        In addition, Moore had the option of obtaining wireless service from at least one

national provider that does not include an arbitration clause in its terms and conditions.  *See*

Virgin Mobile Terms of Service – Contract (http://www.virginmobileusa.com/legal/terms-of-

service-contract (last accessed Jan. 30, 2012)).  And, of course, Moore could have opted out of

the Service Agreement's arbitration provision.  (56.1 ¶¶ 21, 25.)  This fact by itself eliminates

*any* claim of procedural unconscionability.  *See Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d

190, 191 (1st Dep't 2004) (arbitration provision was "not unconscionable because plaintiff had

the opportunity to opt out without any adverse consequences").

---

[10]  *See also Universal Grading Serv. v. eBay, Inc.*, No. 08-CV-3557 (CPS), 2009 U.S. Dist. LEXIS 49841, at *63-64
(E.D.N.Y. June 10, 2009) (requirement that plaintiffs accept eBay's form contract to use its services did not render
contract procedurally unconscionable absent evidence that eBay was "the *only* market for online auctions," not just
the largest) (emphasis in original); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 451-52 (E.D.N.Y. 2004) (no
procedural unconscionability absent "external pressure to accept" contract terms, and noting that an agreement is not
"'procedurally unconscionable, or a contract of adhesion, simply because it is a form contract'").

[11]  The FCC Fifteenth Report notes that 97.2% of the total U.S. population lives in census blocks with access to
three or more different mobile operators; 94.3% of the population lives in census blocks with access to four or more
operators.  FCC Fifteenth Report ¶ 44 & Table 5.

**B.**     **The Contract Is Not Substantively Unconscionable**

Although, in the absence of procedural unconscionability, the Court need not

address the issue of substantive unconscionability,[12] Moore cannot prove the latter either.  In

resolving questions of substantive unconscionability,

> [C]ourts consider whether one or more key terms are unreasonably
> favorable to one party.  There is no general test for measuring the
> reasonableness of a transaction but we have recently provided this
> guidance:  [an] unconscionable contract [is] one which is so
> grossly unreasonable or unconscionable in the light of the mores
> and business practices of the time and place as to be unenforcible
> [sic] according to its literal terms.

*Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 138 (1989) (internal citations and

punctuation omitted); *see also King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, No. 09 Civ.

3980 (DLC), 2009 U.S. Dist. LEXIS 119934, at *18-19 (S.D.N.Y. Dec. 23, 2009) ("'An

unconscionable bargain is one which no person in his or her senses and not under delusion would

make on the one hand, and no honest and fair person would accept on the other . . . .'").

It certainly cannot be said that only a "delusional" person would agree to arbitrate

pursuant to the parties' arbitration agreement.  The Service Agreement's arbitration provision

imposes obligations on both T-Mobile and its customers.  (56.1 ¶¶ 21, 23.)[13]  And the AAA is a

---

[12]  *See, e.g., Builders Group LLC v. Qwest Commc'ns Corp.*, No. 07 Civ. 5464 (DAB), 2009 U.S. Dist. LEXIS 91194, at *16 (S.D.N.Y. Sept. 30, 2009) (where plaintiff made no showing of procedural unconscionability, there was no reason to reach the issue of substantive unconscionability).

[13]  *See Nayal*, 620 F. Supp. 2d at 573 ("[T]he Arbitration Provision is not substantively unconscionable because it equally binds HIP and Nayal to arbitration, and therefore does not unreasonably favor HIP."); *Nichols v. Wash. Mut. Bank*, 07-CV-3216(JG)(VVP), 2007 U.S. Dist. LEXIS 85936, at *27 (E.D.N.Y. Nov. 21, 2007) ("Mandatory arbitration clauses that bind both parties are generally not substantively unconscionable.").

widely respected, well regarded, and independent non-profit alternative dispute resolution organization that provides an unbiased, efficient, low-cost alternative to civil litigation.[14]

Indeed, the Service Agreement makes arbitration particularly attractive for T-Mobile customers.  For claims under $75,000, T-Mobile has agreed to pay:  (i) all filing, administrative and arbitrator fees; and (ii) the "reasonable attorneys' fees and costs" for those prevailing customers who provided T-Mobile with notice of their claims and "negotiated in good faith . . . before initiating arbitration."  (56.1 ¶ 27.)

Moore's claim exceeds this $75,000 threshold, and under his agreement, he would be responsible for bearing his own AAA filing, administrative, and arbitrator fees, at least in the first instance.  But the arbitrator will still have the discretion to award him filing, administrative, and arbitrator fees.  *See* Commercial Arbitration Rules R-43.  To the extent that Moore complains that he will have to advance filing fees and arbitrator fees before a final decision, courts have recognized that such a requirement discourages only frivolous claims, and thus, is not unconscionable, particularly when the plaintiff is suing for a damages award on the order of magnitude sought by Moore.  *See Reid v. Supershuttle Int'l, Inc.*, No. 08-CV-4854 (JG) (VVP), 2010 U.S. Dist. LEXIS 26831, at *12 (E.D.N.Y. Mar. 22, 2010) (requirement that plaintiffs bear certain AAA fees was not substantively unconscionable because they sought approximately $300,000 and would be discouraged from arbitrating only "frivolous claims" for which the "likelihood of success is infinitesimal").

---

[14]  *See Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 292 (S.D.N.Y. 2002) ("There is no basis for concluding that the AAA is a biased forum."); *Storm LLC v. Telenor Mobile Commc'ns AS*, No. 06 Civ. 13157 (GEL), 2006 U.S. Dist. LEXIS 90978, at *27-28 (S.D.N.Y. Dec. 15, 2006) ("Arbitration is intended to be an expeditious and efficient means of resolving commercial disputes.").

Finally, courts routinely enforce arbitration clauses of the type at issue here, including in T-Mobile and other carriers' wireless service agreements.  *See, e.g.*, *Ozormoor v. T-Mobile, USA, Inc.*, No. 08-2596, 2009 U.S. App. LEXIS 26539, at *4-7 (6th Cir. Dec. 3, 2009) (enforcing T-Mobile arbitration provision under Michigan law).[15]  New York courts have also repeatedly upheld arbitration provisions in analogous settings.  *See, e.g.*, *Bar-Ayal v. Time Warner Cable Inc.*, No. 03 CV 9905 (KMW), 2006 U.S. Dist. LEXIS 75972, at *60-61 (S.D.N.Y. Oct. 16, 2006) (describing as "unfounded" claims of substantive unconscionability as to an arbitration provision in a customer agreement, which, *inter alia*, changed the statute of limitations from six years to one year, barred class actions, eliminated the right to jury trial and pre-hearing discovery, and precluded actions in small claims court).[16]

---

[15]  *See also McGinnis v. T-Mobile USA, Inc.*, No. C08-106Z, 2009 U.S. Dist. LEXIS 121885, at *22-23 (W.D. Wash. Dec. 9, 2009) (ruling that T-Mobile arbitration provision is valid and enforceable under Ohio and Oklahoma law); *Hecht v. T-Mobile USA, Inc.*, No. CL 03-6006 AI (Fla. Cir. Ct., 15th Jud. Cir. Nov. 10, 2004) (annexed as Appendix A) (same, under Florida law); *Pfeffer v. Voicestream Wireless Corp.*, No. 03-10541 (Fla. Cir. Ct., 13th Jud. Cir. Sept. 28, 2004) (annexed as Appendix B) (same); *Herzer v. T-Mobile USA, Inc.*, No. CJ-2005-1002 (Okla. Dist. Ct. Dec. 1, 2005) (annexed as Appendix C) (same, under Oklahoma law); *Alinsub v. T-Mobile USA, Inc.*, No. CH-05-0283-2 (Tenn. Ch. Ct., 13th Jud. Dist. May 7, 2007) (annexed as Appendix D) (same, under Tennessee law); *see also Rhodall v. Verizon Wireless of the East, L.P.*, No. 1:10-3195-MBS, 2011 WL 4036418 (D.S.C. Sept. 9, 2011) (enforcing arbitration clause in Verizon wireless service agreement); *Makarowksi v. AT&T Mobility, LLC*, No. CV 09-1590-GAF (CWx), 2009 U.S. Dist. LEXIS 57633, at *7-8 (C.D. Cal. June 18, 2009) (ruling that arbitration clause in AT&T wireless service agreement was enforceable, and granting motion to compel arbitration); *Mitchell v. Verizon Wireless*, No. 05 C 511, 2006 U.S. Dist. LEXIS 15257, at *4-8 (N.D. Ill. Mar. 31, 2006) (same, with respect to arbitration clause in Verizon wireless service agreement).

[16]  *See also Anonymous v. JP Morgan Chase & Co.*, No. 05 Civ. 2442 (JGK), 2005 U.S. Dist. LEXIS 26083, at *18-19 (S.D.N.Y. Oct. 31, 2005) (rejecting contention that arbitration clause in credit card member agreement was substantively unconscionable); *Hayes v. County Bank*, 26 A.D.3d 465, 466-67 (2d Dep't 2006) (upholding arbitration provision in loan agreement as substantively conscionable).

## **CONCLUSION**

For all of the foregoing reasons, this Court should grant T-Mobile's renewed

motion, pursuant to Rule 56, to dismiss Moore's claims and compel their arbitration in

accordance with the FAA and the Service Agreement.

Dated:   New York, New York
         February 1, 2012

Respectfully submitted,

FRIEDMAN KAPLAN SEILER &
    ADELMAN LLP

Daniel B. Rapport (drapport@fklaw.com)
Jason C. Rubinstein (jrubinstein@fklaw.com)
7 Times Square
New York, NY 10036-6516
(212) 833-1100

*Attorneys for Defendant*
*T-Mobile USA, Inc.*

17