UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                                                                 :

TEDDY MOORE,                                           :

                                         Plaintiff,      :

                                                           :      10 CV 00527 (SLT) (CLP)

              - against -                           :

T-MOBILE USA, INC.,                        :

                                    Defendant.   :

------------------------------------------------------------------ x


# DEFENDANT T-MOBILE USA, INC.'S REPLY MEMORANDUM
# OF LAW IN SUPPORT OF ITS RENEWED MOTION
# **PURSUANT TO RULE 56 TO COMPEL ARBITRATION**


                                                                          Daniel B. Rapport (drapport@fklaw.com)
                                                                          Jason C. Rubinstein (jrubinstein@fklaw.com)
                                                                          FRIEDMAN KAPLAN SEILER &
                                                                             ADELMAN LLP
                                                                          7 Times Square
                                                                          New York, New York 10036-6516
                                                                          Telephone:  (212) 833-1100
                                                                          Fax:  (212) 833-1250


February 27, 2012                                     *Attorneys for Defendant*
                                                                    *T-Mobile USA, Inc.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................1

    I.    MOORE AGREED TO ARBITRATE HIS CLAIMS..........................................................1

    II.    THE PARTIES' ARBITRATION AGREEMENT ENCOMPASSES MOORE'S CLAIMS ..................................................................................................................................4

    III.    NEITHER T-MOBILE'S EFFORT TO COLLECT ON MOORE'S DEBT NOR MOORE'S CANCELLATION OF SERVICE EXCUSES HIM FROM HIS OBLIGATION TO ARBITRATE HIS CLAIMS ..................................4

    IV.    MOORE'S AGREEMENT TO ARBITRATE IS ENFORCEABLE ................................5

    V.    T-MOBILE HAS NOT WAIVED ITS RIGHT TO ARBITRATE .....................................8

CONCLUSION ...............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AT&T Mobility LLC v. Concepcion*,
　131 S. Ct. 1740 (2011) ................................................................................................................8

*Beattie v. Brown & Wood*,
　243 A.D.2d 395 (1st Dep't 1997) ...............................................................................................3

*Builders Group LLC v. Qwest Commc'ns Corp.*,
　No. 07 Civ. 5464 (DAB), 2009 U.S. Dist. LEXIS 91194 (S.D.N.Y. Sept. 30, 2009) ...............6

*Chalk v. T-Mobile USA, Inc.*,
　560 F.3d 1087 (9th Cir. 2009) ....................................................................................................8

*Ciago v. Ameriquest Mortgage Co.*,
　295 F. Supp. 2d 324 (S.D.N.Y. 2003) ........................................................................................7

*DeBono v. Wash. Mut. Bank*,
　No. 05 Civ. 10333(DC), 2006 WL 3538938 (S.D.N.Y. Dec. 8, 2006) ......................................3

*Glew v. CIGNA Group Ins.*,
　590 F. Supp. 2d 395 (E.D.N.Y. 2008) ........................................................................................2

*Kramer v. Hammond*,
　943 F.2d 176 (2d Cir. 1991) .......................................................................................................9

*Laster v. AT & T Mobility LLC*,
　584 F.3d 849 (9th Cir. 2009) ......................................................................................................8

*Lowden v. T-Mobile USA, Inc.*,
　512 F.3d 1213 (2008) .................................................................................................................8

*Penn Intermodal Leasing, Inc. v. Shipping Corp. of India*,
　No. 95 Civ. 10178(SWK), 1997 WL 431087 (S.D.N.Y. July 30, 1997) ...................................2

*Reid v. Supershuttle Int'l, Inc.*,
　No. 08-CV-4854 (JG) (VVP), 2010 U.S. Dist. LEXIS 26831 (E.D.N.Y. Mar. 22,
　2010) ..........................................................................................................................................8

*Shroyer v. New Cingular Wireless Services, Inc.*,
　498 F.3d 976 (2007) ...................................................................................................................8

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
　310 F.3d 102 (2d Cir. 2002) ...................................................................................................8, 9

**Page(s)**

*Tsadilas v. Providian Nat'l Bank*,
    13 A.D.3d 190 (1st Dep't 2004) ....................................................................................6

*Valdes v. Swift Transp. Co., Inc.*,
    292 F. Supp. 2d 524 (S.D.N.Y. 2003).............................................................................7


**STATUTES & RULES**

FED. R. EVID. 1004............................................................................................................2


**OTHER AUTHORITIES**

8 WILLISTON ON CONTRACT § 18:12 (4th ed.) ..................................................................7

**PRELIMINARY STATEMENT**

In its opening papers, T-Mobile established that there is no dispute of material fact that Moore signed T-Mobile's Service Agreement and activated T-Mobile service. It further demonstrated that, as a result, (i) Moore formed a binding arbitration agreement with T-Mobile, (ii) Moore's claims fall within the scope of that agreement, and (iii) the agreement is enforceable under New York law. In his opposition papers, Moore fails to offer a coherent response to any of these points, or identify a single reason why an order dismissing his claims and compelling their arbitration would be inappropriate. T-Mobile's renewed motion, pursuant to Rule 56, to dismiss Moore's claims and compel their arbitration should therefore be granted.

**ARGUMENT**

**I.**

**MOORE AGREED TO ARBITRATE HIS CLAIMS**

In its opening papers, T-Mobile demonstrated that Moore admitted to signing the T-Mobile Service Agreement and activating T-Mobile service, and thus agreed to arbitrate his claims.[1] Disregarding both the incontrovertible record evidence (including his own sworn admissions) and hornbook law, Moore claims that he did not form an agreement to arbitrate with T-Mobile. He offers three arguments in support of this conclusion, all indefensible.

*First*, Moore appears to argue, incorrectly, that T-Mobile has not proved that it formed a binding agreement with him because it has not produced a signed copy of his Service Agreement. (Affirmation in Opposition & Cross Motion, Feb. 2, 2012 ("Moore Aff."), ¶¶ 7, 9;

---

[1] *See* T-Mobile's Memorandum of Law in Support of its Renewed Motion Pursuant to Rule 56 to Compel Arbitration, dated Feb. 1, 2012 ("TM Mem."), at 8-10. Undefined and abbreviated terms used herein have the same meaning as in the TM Mem.

Dkt. No. 66 ¶ 1.)[2]  Where, as here, a party attempting to enforce the terms of a contract cannot obtain an original copy of the agreement (56.1 ¶ 14), secondary evidence is admissible to prove both its existence and contents.[3]  Moore's deposition testimony unequivocally confirms that (i) Moore signed a T-Mobile Service Agreement, and (ii) the form of Service Agreement appended to T-Mobile's opening papers (Baca Decl. Ex. A) is the agreement he signed.  His contention that "Defendant has not presented a valid agreement to arbitrate" is therefore baseless.

*Second*, Moore claims that he never signed the Terms and Conditions, only "a two page letter called: 'Important customer information' and that this is not an agreement to arbitrate, but just a notice that an arbitration exist [sic] . . . ."  (Dkt. No. 66 ¶ 2.)  The "two page letter" that Moore admitted signing is in fact the Service Agreement, which has the header "Important Customer Information."  (56.1 ¶¶ 8, 16.)  Moore's claim that the Service Agreement does not include an agreement to arbitrate is baseless.  The Service Agreement provides:  "MY AGREEMENT WITH T-MOBILE AFFECTS MY AND T-MOBILE'S LEGAL RIGHTS.  AMONG OTHER THINGS, IT . . . **REQUIRES MANDATORY ARBITRATION OF DISPUTES** . . . ."  (*Id.* ¶ 21 (emphasis in original).)  It also expressly incorporates by reference the Terms and Conditions, which provide details about the arbitration procedure.

*Third*, Moore denies that he saw the Terms and Conditions at the time he activated T-Mobile service, and that he was therefore unable to "read, understand, [and] agree"

---

[2]  Moore's opposition appears to incorporate by reference the arguments raised in his letter to the Court of October 6, 2011 (Dkt. No. 66).  (Moore Aff. ¶ 2.)

[3]  *See* FED. R. EVID. 1004 ("The original is not required, and other evidence of the contents of a writing . . . is admissible if . . . [a]ll originals are lost or have been destroyed . . . ."); *Penn Intermodal Leasing, Inc. v. Shipping Corp. of India*, No. 95 Civ. 10178(SWK), 1997 WL 431087, at *4-5 (S.D.N.Y. July 30, 1997) (ruling that, where the original contract is lost or destroyed, the Court is allowed to consider secondary evidence to prove the existence and contents of the written contract); *Glew v. CIGNA Group Ins.*, 590 F. Supp. 2d 395, 412-15 (E.D.N.Y. 2008) (relying on insured's oral testimony to determine the scope of coverage under a lost insurance policy).

to them. (Dkt. No. 66 ¶ 3; *see also* Moore Aff. at 4 n.5.) Moore's contention contradicts his recitals in the Service Agreement, in which he expressly represented that the "TERMS AND CONDITIONS ARE IN MY DEVICE BOX OR WERE OTHERWISE PROVIDED TO ME AT THE TIME OF SALE, AND ARE AVAILABLE AT WWW.T-MOBILE.COM . . . . BY SIGNING, *I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ ALL OF THE ABOVE DOCUMENTS*." (56.1 ¶ 19 (emphasis added).) Given this representation, Moore's self-serving statement that he never had access to the Terms and Conditions should not be credited. *See, e.g.*, *Beattie v. Brown & Wood*, 243 A.D.2d 395, 395 (1st Dep't 1997) (affirming dismissal of legal malpractice claim where plaintiff's "allegation that he was not advised by defendant law firm that a settlement agreement, which he executed . . . , withdrew his counterclaims in that action with prejudice, is flatly contradicted by the agreement").

   Moreover, there is no authority suggesting that T-Mobile's alleged failure to provide Moore with a hard copy of the Terms and Conditions would vitiate his undisputed, written agreement to arbitrate, especially as the Service Agreement describes the essentials of that agreement, and provides specific instructions for how to review the Terms and Conditions online. *See generally DeBono v. Wash. Mut. Bank*, No. 05 Civ. 10333(DC), 2006 WL 3538938, at *2-3 (S.D.N.Y. Dec. 8, 2006) (rejecting claim that arbitration agreement was invalid when employee received and signed only the final page of a three-page agreement, where employee was placed on notice that signing an arbitration agreement was a condition of employment).

   Accordingly, the evidence conclusively establishes that Moore agreed to arbitrate his claims against T-Mobile.

II.

**THE PARTIES' ARBITRATION AGREEMENT ENCOMPASSES MOORE'S CLAIMS**

As set forth in T-Mobile's opening papers, this Court has already ruled that the arbitration provision set forth in the Service Agreement encompasses Moore's claims under the TCPA, and that there is no reason for the Court to modify its ruling on this point. The scope of the parties' arbitration agreement is broad. And even if any doubts existed about whether it encompasses Moore's claims, the law of this Circuit mandates that they be resolved in favor of arbitration. (TM Mem. at 10-11.) Moore's citationless assertion that his claims fall outside the scope of his agreement to arbitrate (Dkt. No. 66 ¶¶ 11-12) should therefore be disregarded.

III.

**NEITHER T-MOBILE'S EFFORT TO COLLECT ON MOORE'S DEBT NOR MOORE'S CANCELLATION OF SERVICE EXCUSES HIM FROM HIS OBLIGATION TO ARBITRATE HIS CLAIMS**

Moore argues that, even if he agreed to arbitrate, he should be exempted from that obligation. His contention is untenable. *First*, Moore asserts that T-Mobile's efforts to secure payment of his $62.28 in past due charges by making collection calls to him, instead of commencing an arbitration, was a material breach of the Service Agreement, excusing him from his agreement to arbitrate. (Dkt. No. 66 ¶¶ 6-7, 13.) But the parties' agreement expressly authorizes T-Mobile to "assign" a customer's "account for collection" and "use a collection agency" to recover sums owed by delinquent customers. (56.1 ¶¶ 24, 36.) T-Mobile could not have breached the Service Agreement by making collection efforts authorized by that agreement, let alone a material breach excusing Moore's own obligation to arbitrate.

*Second*, Moore argues that his cancellation of T-Mobile service extinguished his obligations under the Service Agreement, particularly his agreement to arbitrate (and by

4

implication, his obligation to pay for wireless service he received pre-cancellation). (Dkt. No. 66 ¶ 8.) His contention ignores the plain terms of his agreement. Moore expressly agreed that:

- If he cancelled service, he would "remain responsible to pay for the Service and all charges, fees and taxes incurred *through the date of cancellation*" of T-Mobile service (56.1 ¶ 32 (emphasis added));
- If he failed to pay any amounts due for such service, T-Mobile was entitled to refer his delinquent account to collection (*id.* ¶¶ 24, 36); and
- He would arbitrate any claims or disputes "in any way related to or concerning" the parties' agreement and T-Mobile's services "including any billing disputes" before the AAA. (*Id.* ¶¶ 21, 23.)

This action springs directly from Moore's refusal to pay – and T-Mobile's attempts to collect on – amounts Moore owes for T-Mobile service he received *before* "the date of cancellation." Moore's contention that, merely by cancelling service, he extinguished his obligation to arbitrate cannot be reconciled with his clear obligations to (i) pay for T-Mobile service he received during his contract term, and (ii) arbitrate disputes relating to or arising out such service (including billing disputes), and therefore should be rejected.

## IV.

### MOORE'S AGREEMENT TO ARBITRATE IS ENFORCEABLE

As set forth in T-Mobile's opening papers, an arbitration agreement may be invalidated as unconscionable as a matter of New York law only upon a showing that it is *both* procedurally *and* substantively unconscionable. (TM Mem. at 11-12.) Contrary to Moore's representation (Moore Aff. ¶ 5), this Court has never suggested that the parties' agreement to arbitrate is unconscionable. And Moore has failed to articulate any basis for a finding of either procedural or substantive unconscionability.

T-Mobile demonstrated that the parties' agreement cannot be attacked as procedurally unconscionable because T-Mobile prominently notified Moore of his agreement to

5

arbitrate, Moore could have obtained service from wireless carriers other than T-Mobile (including at least one carrier that did not require the arbitration of customer disputes), and Moore had the opportunity to opt-out of arbitration.  (TM Mem. 12-13.)  Moore offers no response to T-Mobile's showing, other than the conclusory assertion that the Service Agreement "is an adhesion contract and thus unenforceable." (Moore Aff. ¶ 11.)  Moore's assertion is incorrect because courts routinely enforce standard form contracts for consumer goods and services.  (TM Mem. at 12.)

Because Moore cannot sustain his burden on procedural unconscionability, the Court need not reach the question of substantive unconscionability.[4]  But for the reasons set forth in T-Mobile's opening papers, Moore cannot prove the latter either.  (TM Mem. at 14-16.)  The only reason Moore asserts the Service Agreement is substantively unconscionable is that he allegedly cannot "afford the filing fee of more than $10,000" to arbitrate his $420,000 claim. (Moore Aff. ¶ 5; Dkt. No. 66 ¶10.)  Moore's argument, which he fails to substantiate with even a scintilla of evidence as to the costs of arbitrating his claims, is without merit.

The "'risk that [a] plaintiff will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.  To invalidate the agreement on that basis would undermine the liberal federal policy favoring arbitration agreements.'" *Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d 190, 191 (1st Dep't 2004) (quoting *Green Tree Fin. Corp.-Ala. v. Randolf*, 531 U.S. 79, 91 (2000)) (internal punctuation omitted).  Under the Standard Fee Schedule set forth in the Commercial Arbitration Rules (*see* http://www.

---

[4] *See Builders Group LLC v. Qwest Commc'ns Corp.*, No. 07 Civ. 5464 (DAB), 2009 U.S. Dist. LEXIS 91194, at *16 (S.D.N.Y. Sept. 30, 2009) (where plaintiff made no showing of procedural unconscionability, there was no reason to reach the issue of substantive unconscionability).

6

adr.org/sp.asp?id=22440), a claimant asserting a $420,000 claim before the AAA would typically pay a filing fee of $6,000, not the $10,000 claimed by Moore.  And it is by no means obvious that Moore would be required to pay even this amount.  Numerous courts have recognized that the AAA has the discretion to defer or reduce a parties' filing and administrative fees upon a showing of extreme hardship and, on this basis, have rejected as "speculative" plaintiffs' concerns about the costs of bringing an arbitration before the AAA.[5]

Even assuming the truth of Moore's allegation about the costs of arbitration, that does not make the Service Agreement unconscionable.  Whether a contract is unconscionable is evaluated as of the time the contract is entered into, before the parties have performed and before any claims have been asserted.  *See generally* 8 WILLISTON ON CONTRACT § 18:12 (4th ed.) ("The determination of whether a given clause or contract is in fact unconscionable is to be made at the time of its making rather than at some subsequent point in time (e.g., at the time for performance).").  Viewed from that perspective, the Service Agreement is entirely reasonable.  The AAA is an attractive venue for T-Mobile customers, and the Service Agreement permits them to prosecute claims for up to $75,000 before the AAA *entirely at T-Mobile's expense*.  As courts in this District have recognized, there is no unfairness in requiring plaintiffs such as Moore, who seek hundreds of thousands of dollars in damages, to bear their own AAA fees – particularly as the AAA has the discretion to reduce or defer those fees, and compel T-Mobile to pay them if Moore prevails on his claims.  (*See* TM Mem. at 15.)  Such a requirement only

---

[5] *See, e.g.*, *Valdes v. Swift Transp. Co., Inc.*, 292 F. Supp. 2d 524, 534 (S.D.N.Y. 2003) (deeming claims of financial hardship "especially speculative" in light of AAA rule providing for "administrative fees to be 'defer[red] or reduce[d]' in the event of "extreme hardship"); *Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324, 334 (S.D.N.Y. 2003) (rejecting as speculative plaintiff's assertion that the costs of arbitrating would be excessive where plaintiff claimed she would be required to pay a $13,000 filing fee, defendant countered that the filing fee for her $50,000 claim would be $750, and the AAA rules authorized the waiver of such fees upon a showing of hardship).

7

discourages the filing of frivolous claims, and therefore is not unconscionable. *See Reid v. Supershuttle Int'l, Inc.*, No. 08-CV-4854 (JG) (VVP), 2010 U.S. Dist. LEXIS 26831, at *11-12 (E.D.N.Y. Mar. 22, 2010) (requirement that plaintiffs bear AAA fees not unconscionable where they sought $300,000).

Further, Moore's claim that the parties' arbitration agreement has been deemed unenforceable "time and again" is meritless. Moore makes no effort to distinguish the authorities cited by T-Mobile, which show that courts routinely enforce both T-Mobile's arbitration agreement and arbitration agreements formed in analogous settings. (TM Mem. at 16 & n. 15-16.) By contrast, all of the authorities on which Moore relies are irrelevant.[6]

## V.

### T-MOBILE HAS NOT WAIVED ITS RIGHT TO ARBITRATE

Finally, Moore argues that, because T-Mobile did not assert arbitration as an affirmative defense in its original answer, it has waived its right to enforce the parties' agreement to arbitrate. (Dkt. No. 66 ¶¶ 9-10.) Moore's argument ignores controlling authority. In *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102 (2d Cir. 2002), the Second Circuit held that a defendant's failure to raise arbitration as an affirmative defense in its answer was not a waiver. Observing that, "'[t]here is a strong presumption in favor of arbitration [, and] waiver of the right to arbitration is not to be lightly inferred,'" *Thyssen* stated that a court may infer a waiver only if

---

[6] None of the authorities cited by Moore (Moore Aff. ¶ 11) suggests that his agreement with T-Mobile is unenforceable. *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1090 (9th Cir. 2009), held that an arbitration agreement's class action waiver was substantively unconscionable and therefore unenforceable under Oregon, not New York law. *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213 (2008), reached the same conclusion under Washington law. *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (2007), and *Laster v. AT & T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), both reached that result under California law. In relying on these decisions, Moore disregards the fact that none of them is good law. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), expressly held that the FAA preempts state laws that would void arbitration agreements based on their inclusion of a class action waiver clause. Moore also neglects the facts that (i) the enforceability of his agreement to arbitrate is governed by New York law, and (ii) he is suing individually, not as a member of a class.

8

enforcing an arbitration provision would work a "substantive prejudice," or result in "prejudice due to excessive cost and time delay." *Id.* at 104-05 (quoting *Coca-Cola Bottling Co. v. Soft Drink and Brewery Workers Union Local 812*, 242 F.3d 52, 57 (2d Cir. 2001)).

Substantive prejudice arises in circumstances readily distinguishable from this case, "such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991). Moore commenced this action in January 2010; T-Mobile filed its amended answer, invoking its right to compel arbitration, on March 31, 2010. (56.1 ¶¶ 38, 39; Rubinstein Decl. Ex E.) Nearly two years later, there has been no litigation on the merits of Moore's claims. A referral to arbitration would in no way substantively prejudice Moore.

Nor was T-Mobile tardy in invoking its right to compel arbitration, thereby causing Moore excessive cost and delay. It amended its answer within three months of Moore's filing this action, before the parties had engaged in any motion practice or discovery. *See Thyssen*, 310 F.3d at 105 (notwithstanding "significant length of time between the filing of the complaint and the assertion of [defendant's] right to arbitrate, there was no evidence of extensive discovery or substantive motions"). Indeed, if the parties have faced excessive costs and delay, Moore's decision to misrepresent to the Court that he never signed the Service Agreement and his history of subjecting T-Mobile to frivolous motion practice – including his motions to incarcerate counsel for T-Mobile for contempt, enjoin T-Mobile's merger with AT&T, and for class certification (Dkt. Nos. 25, 49 at Ex. A, 51) – are to blame.[7]

---

[7] In his opposition, Moore again urges that T-Mobile's counsel be sanctioned, this time for submitting a declaration from Andrea Baca in support of its motion. (Moore Aff. at 4-5 n.5) Moore's objection to the Baca declaration – "Ms. Bacca [sic] has never seen me and I have never seen her" (*id.*) – is frivolous. Ms. Baca's declaration limits

## CONCLUSION

For all of the reasons set forth above and in T-Mobile's moving papers, this Court should grant T-Mobile's renewed motion, pursuant to Rule 56, to dismiss Moore's claims and compel their arbitration in accordance with the FAA and the Service Agreement.

Dated: New York, New York
February 27, 2012

Respectfully submitted,

FRIEDMAN KAPLAN SEILER &
ADELMAN LLP

_/s/ Jason C. Rubinstein_
Daniel B. Rapport (drapport@fklaw.com)
Jason C. Rubinstein (jrubinstein@fklaw.com)
7 Times Square
New York, NY 10036-6516
(212) 833-1100

*Attorneys for Defendant*
*T-Mobile USA, Inc.*

---

itself to detailing T-Mobile's business records relating to Moore, authenticating documents (including the forms of agreement governing Moore's relationship with T-Mobile), and describing T-Mobile policies and procedures.