

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TEDDY MOORE,

       Plaintiff,     **<u>MEMORANDUM AND ORDER</u>**

   — against —      10-CV-527 (SLT)(CLP)

T-MOBILE USA, INC.,

       Defendant.
-----------------------------------------------------------X
**TOWNES, United States District Judge**.

   Plaintiff, Teddy Moore ("Moore"), a disbarred attorney proceeding *pro se*, commenced this action against defendant T-Mobile USA, Inc. ("T-Mobile"), seeking a total of $420,000 in damages pursuant to the Telephone Consumer Protection Act ("TCPA") of 1991, 47 U.S.C. § 227.  T-Mobile now moves for summary judgment with respect to a previously filed motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., and requests dismissal of the action.  For the reasons set forth below, the Court grants T-Mobile's motion to compel arbitration and dismisses Moore's claims.

***BACKGROUND***

**I.  Facts**

   Except as otherwise indicated, the facts in this section are drawn from Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Def. 56.1"), which have not been specifically controverted by Moore.  Local Rule 56.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York provides that uncontroverted allegations in a statement of material facts pursuant to Local Rule 56.1 are deemed admitted.

On August 27, 2008, Moore visited Mobile 4 U, an authorized T-Mobile dealer, and entered into a twelve-month contract for cellular service with T-Mobile.  Def. 56.1 at ¶¶ 3, 17. As an authorized T-Mobile dealer, T-Mobile's policy required that Mobile 4 U print out copies of the contract (the "Service Agreement") for customers to review and sign prior to the activation of their cellular service.  Def. 56.1 at ¶ 9.        An unsigned copy of the Service Agreement prepared for Moore's signature has been submitted to the Court by T-Mobile as Exhibit A to the Declaration of Andrea M. Baca dated Jan. 30, 2012 ("Baca Declaration").

The Service Agreement is a "three-page computer-generated document maintained on T-Mobile's account activation computer system."  Def. 56.1 at ¶ 7.  Although the first page bears the heading, "SERVICE AGREEMENT," it resembles a form more than a contract in that it contains four data boxes into which information relating to Moore's account has been entered. The first of these boxes lists Moore's name, address, social security number, and home telephone number.  The second box contains information relating to the sales representative, Mobile 4 U. The third and fourth boxes contain "service information," including the rates and features of the cellphone service selected, and billing and payment information.

The remaining two pages of the Service Agreement contain boilerplate, which is divided into two sections, each containing a series of bullet points.  The second page of the Service Agreement begins with a section entitled, "**IMPORTANT CUSTOMER INFORMATION**," which, among other things, apprises the customer that the Service Agreement incorporates certain "Terms and Conditions."  The text next to the seventh bullet in this section states:

> Your agreement with T-Mobile includes this document ("Service Agreement"), the T-Mobile standard Terms and Conditions . . . and your specific Rate Plan terms. . . . **Please be sure to review the full Terms and Conditions included in your device box; you can also view and print Terms and Conditions by logging into www.T-Mobile.com** . . . .

2

Baca Declaration, Ex. A; Def. 56.1 at ¶ 18 (emphasis in original).

The second section, which begins in the middle of page two and continues on page three of the Service Agreement, is entitled, "**CUSTOMER ACCEPTANCE** (Required)." This section begins by stating:

> BY SIGNING THIS FORM OR ACTIVATING OR USING T-MOBILE SERVICE I ACKNOWLEDGE AND AGREE THAT:
>
> - MY AGREEMENT WITH T-MOBILE INCLUDES THIS SERVICE AGREEMENT . . . THE SEPARATE STANDARD T-MOBILE TERMS AND CONDITIONS . . . AND MY RATE PLAN TERMS. THE T-MOBILE TERMS AND CONDITIONS ARE IN MY DEVICE BOX OR WERE OTHERWISE PROVIDED TO ME AT THE TIME OF SALE, AND ARE AVAILABLE AT WWW.T-MOBILE.COM. . . .

Baca Declaration, Ex. A, p.2; Def. 56.1 at ¶ 19.  This section also includes an arbitration provision under the fourth bullet point, which reads as follows:

> I UNDERSTAND THAT MY AGREEMENT WITH T-MOBILE AFFECTS MY AND T-MOBILE'S LEGAL RIGHTS.  AMONG OTHER THINGS, IT:
>
> - **REQUIRES MANDATORY ARBITRATION OF DISPUTES UNLESS . . . I OPT OUT OF THE ARBITRATION PROCEDURES BY CALLING 1-866-323-4405 OR COMPLETING AN OPT-OUT FORM AT www.T-Mobiledisputeresolution.com** *WITHIN 30-DAYS FROM THE DATE OF ACTIVATION* **(See, Section 2 of the Terms and Conditions)** . . .;
>
> - REQUIRES WAIVER OF THE RIGHT OF ANY ABILITY TO PARTICIPATE IN A CLASS ACTION IF I DO NOT OPT OUT OF ARBITRATION, AND WAIVER OF THE RIGHT TO A JURY TRIAL.

Baca Declaration, Ex. A, p.2; Def. 56.1 at ¶ 21.  This "CUSTOMER ACCEPTANCE" section, and the Service Agreement, ends about half-way down the third page, where there is a line for the customer's signature.  Baca Declaration, Ex. A, p.3.  Above the signature line are two sentences, the first of which reads: "I am of legal age and represent that all the information I have provided to T-Mobile is accurate."  *Id.*

T-Mobile's Terms and Conditions, which are attached to the Baca Declaration as Exhibit B, provide further detail regarding the mandatory arbitration requirement.  In a section entitled "Dispute Resolution and Arbitration," the Terms and Conditions state: "WE EACH AGREE THAT . . . ANY AND ALL CLAIMS OR DISPUTES BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN  COURT."  Baca Declaration, Ex. B, p. 1 of 10.  The Terms and Conditions further provide: "The American Arbitration Association (AAA) will arbitrate all disputes . . . for claims over $75,000, the AAA's Commercial Arbitration Rules will apply."  Baca Declaration, Ex. B, p. 2 of 10; Def. 56.1 at ¶ 27.  However, the Terms and Conditions also note that a customer can opt out of the mandatory arbitration provision within 30 days of activating the cellphone service.  Baca Declaration, Ex. B, p. 2.  In addition, the Terms and Conditions contain a "Choice of Laws" provision, which states: "The Agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state in which your billing address in our records is located."  *Id*. at p. 7 of 10.

T-Mobile asserts that it has attempted to obtain a signed copy of Moore's Service Agreement from Mobile 4 U, but has been unable to locate a copy.  Def. 56.1 at ¶ 14.  However, T-Mobile retained an unsigned, electronic copy of Moore's Service Agreement—i.e., Exhibit A to the Baca Declaration—on their account activation's computer system.  Def. 56.1 at ¶ 15.  Moore never exercised his opt out right under the Service Agreement nor Terms and Conditions.  Def. 56.1 at ¶ 26.

On July 30, 2009, Moore made his final payment to T-Mobile for services provided between June 25 through July 24, 2009.  Def. 56.1 at ¶ 29.  From July 24 to August 31, 2009,

Moore continued to use his cellular phone and accrue charges.  Def. 56.1 at ¶ 30.  On August 31, 2009, at the end of his twelve-month contract, Moore terminated his service with T-Mobile.  Def. 56.1 at ¶ 31.  Since the termination, T-Mobile has attempted to collect past due charges accrued between July 24 through August 31, 2009 totaling $62.28, which Moore disputes.  Def. 56.1 at ¶¶34-35, 37.

**I.**      **Procedural History**

On January 12, 2010, Moore commenced this action by filing a "Summons with Endorsed Complaint" in the Civil Court of New York, Queens County.   The Endorsed Complaint consisted of three sentences:

> The nature and the substance of the plaintiff's cause of action is as follows: 280 harrassing phone calls @ $1,500 per call for total of $420,000.00 with interest from 09/02/2009.  Harassing phone calls to collect a bogus debt of $60.  Gross negligence, negligence, and fraud.

On February 3, 2010, T-Mobile filed a two-paragraph answer, the first paragraph of which "denie[d] the allegations in the Complaint."   The second paragraph stated "that the allegations concerning (a) gross negligence, negligence, and fraud and (b) plaintiff's purported entitlement to '$1,500 per call for [a] total of $420,000.00 with interest from 09/02/2009' state conclusions of law to which no response is required."   The answer also asserted two affirmative defenses, alleging that the complaint failed to state a claim upon which relief could be granted, and that the Civil Court lacked jurisdiction over the case because Moore's demand exceeded the court's jurisdictional limit of $25,000.

On February 5, 2010, T-Mobile removed the case to federal court, alleging that this Court had diversity jurisdiction.   On February 19, 2010, Magistrate Judge Cheryl Pollak ("Judge Pollak") scheduled an in-person initial conference.   During the conference, Moore denied the existence of any arbitration agreement with T-Mobile, stating "I have no signed contract

agreement, such agreement doesn't exist."   Transcript of Mar. 24, 2010, conference ("Conference Tr.") at 13.  At the conclusion of the conference, Judge Pollak granted permission for T-Mobile to amend its answer and to move to compel arbitration.  Conference Tr. at 11-13.

One week after the conference, on March 31, 2010, T-Mobile filed an amended answer, which differed from the original answer only in that it replaced the second affirmative defense—alleging that the Civil Court lacked jurisdiction—with two new affirmative defenses. The first of these alleged, "The claims asserted in the complaint are subject to mandatory arbitration in accordance with [Moore's] contract with T-Mobile."

On April 14, 2010, T-Mobile moved to compel arbitration, arguing that Moore was contractually obligated to arbitrate the claims in the instant action.  In opposition, Moore primarily argued that the arbitration clause was unenforceable "absent a valid signed agreement to arbitrate . . . ."  Moore Affirmation in Opp'n, dated April 14, 2010 ("Moore Affirmation I") at 16.  On June 10, 2010, this Court referred T-Mobile's motion to compel to Judge Pollak for a Report and Recommendation ("R&R").

In an R&R dated November 8, 2010, Judge Pollak principally addressed the question of whether the arbitrability question should be decided by the Court, rather than by an arbitator. The magistrate judge acknowledged that a threshold question raised by T-Mobile's motion to compel arbitration was whether Moore had entered into an agreement containing the mandatory arbitration provisions and noted that such "contract formation" disputes are "generally for courts to decide."  R&R at 8 (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, – U.S.–, 130 S.Ct. 2847 (2010)).   Accordingly, Judge Pollak recommended that "the parties proceed to an immediate trial to determine whether plaintiff entered into a contract with T-Mobile and agreed to the terms of the Service Agreement."  R&R at 11.  Judge Pollak further recommended that

6

discovery in advance of trial be limited to the issue of whether Moore and T-Mobile entered into a contract.  On February 15, 2011, this Court adopted Judge Pollak's R&R.

In the course of the limited discovery that followed, T-Mobile deposed Moore.  Dep. of Teddy Moore, Apr. 13, 2011 ("Moore Dep.").   During the deposition, Moore provided the following testimony regarding the Service Agreement:

> Q.  So you've seen Exhibit B [the Service Agreement] in one form or another before?
>
> A.  Yes.  I have seen it, as I told you before.  I signed it on the second page of the signature, which is 'Important Customer Information' . . .
>
>       *                *               *
>
> A.  I haven't signed it in any place, except the signature on the third page after "I am of legal age," et cetera, et cetera.  I signed here.  I haven't entered anything for the business or for the date, as I recall.  And this was the only signature . . . .
>
> Q.  But you do recall signing this?
>
> A. Yes.

Moore Dep. at 31:2-32:19.

On April 19, 2011, T-Mobile filed a letter which, among other things, requested permission to "renew its motion to stay Moore's claims and compel their arbitration pursuant to the Federal Arbitration Act."  Letter to Hon. Sandra L. Townes, from Jason C. Rubenstein, dated Apr. 19, 2011.  On September 30, 2011, this Court issued a memorandum and order construing this portion of T-Mobile's letter to be a "pre-motion conference request" for permission to move for summary judgment pursuant to Fed. R. Civ. P. 56.  Memorandum & Order at 4 (citing Individual Motion Practices & Rules of Judge Sandra L. Townes, § III.A).  This memorandum and order gave Moore until October 17, 2011, to respond to the pre-motion conference request by explaining why defendant should not be granted permission to move for summary judgment

on the arbitration issue.  On October 6, 2011, Moore submitted a response in which he again acknowledged that he "signed a two page letter called: 'Important customer information.'" However, Moore asserted, "this is not an agreement to arbitrate, but just a notice that an arbitration agreement exist [*sic*] among other information, that was provided for their clients." Letter to the Hon. Sandra L. Townes, from T. Moore, dated October 6, 2011 ("Moore's PMC Response").

On January 17, 2012, this Court granted T-Mobile permission to move for summary judgment.  T-Mobile now moves for summary judgment with respect to the previously filed motion to compel arbitration arguing that: (1) Moore agreed to arbitrate his claims; (2) the parties' arbitration agreement encompasses Moore's claims; (3) Moore's agreement to arbitrate is enforceable; and (4) T-Mobile has not waived its right to arbitrate.  Moore has opposed this motion in a five-page submission entitled, "Affirmation in Opposition and Cross Motion" (hereafter, "Moore Affirmation II") which was filed as both Document #75 and (with a short cover letter) as Document #87.  As its title connotes, that submission—which incorporates by reference the arguments set forth in Moore's PMC Response—seeks "summary judgment against Defendant on liability."  *Id*. at 1.

## DISCUSSION

### I.    Standard of Review

"[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration."  *See Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003).  Summary judgment should be granted "where the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as

a matter of law." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 90 (2d Cir. 2002) (citing Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the party moving for summary judgment demonstrates that there are no genuine issues of material fact, "the nonmoving party, must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." *Burt Rigid Box*, 302 F.3d at 91 (citing *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)).  However, "if the evidence [presented by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotation marks omitted) (alteration in original).  The nonmoving party cannot simply rest upon "conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Burt Rigid Box*, 302 F.3d at 91 (citing *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)).

When deciding a summary judgment motion, "there is no requirement that the trial judge make findings of fact." *Anderson*, 477 U.S. at 250.  Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*.  The "court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587  (1986)).

In this case, Moore, although proceeding *pro se*, was once an admitted attorney. However, Moore has been disbarred from the practice of law in this court, the United States Supreme Court, and the Supreme Court of the State of New York, Appellate Division, Second Department. *See Moore v. City of New York*, No. 09-CV-2449 (RRM)(LB), 2009 U.S. Dist. LEXIS 64826, at *2 n.1 (E.D.N.Y. July 28, 2009); *see also In re Disbarment of Moore*, 529 U.S. 1127 (2000); *In re Moore*, 177 F. Supp. 2d 197 (S.D.N.Y. 2001); *In re Moore*, 299 A.D.2d 38 (App. Div. 2d Dep't 2002).   As a former attorney, Moore is not entitled to the degree of liberality given to non-attorney *pro se* Plaintiffs.  *See, e.g., See, e.g., Moore v. City of New York*, No. 08-CV-2449 (RRM)(LB), 2011 WL 795103, at *1 (E.D.N.Y. Feb. 28, 2011); *Heller v. Emanuel*, No. 07-CV-1393 (ARR), 2007 WL 1491081, at *2 (E.D.N.Y. May 21, 2007).

**II.**     Enforcement of the Arbitration Clause

The Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq.*, "creates a body of federal substantive law of arbitrability applicable to arbitration agreements . . . affecting interstate commerce."  *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) (internal quotation marks omitted).   In enacting the FAA, Congress intended to "counteract an historic judicial hostility toward arbitration, which often trumped the parties' clear intentions."   *Schnabel v. Trilegiant Corp*, No. 11-1311-CV, 2012 WL 3871366, at *6 (2d Cir. Sept. 7, 2012) (citing *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 272, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).   The FAA expresses "a strong federal policy favoring arbitration as an alternative means of dispute resolution."    *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp*., 246 F.3d 219, 226 (2d Cir. 2001)).  Indeed, the Second Circuit has noted that "it is difficult to overstate the strong federal policy in favor of arbitration," and has

observed that it is a policy that the Court has "often and emphatically applied." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (internal quotation marks omitted).

The Second Circuit has also noted, however, that "emphatic application does not amount to automatic application." *Ragone*, 595 F.3d at 121. The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. Thus, the FAA places arbitration agreements "upon the same footing as other contracts." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511 (1974) (internal quotation marks omitted). It "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989); *accord E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002). In addition, "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

To determine whether all or part of an action is arbitrable under the FAA, a district court must resolve four inquiries:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987) (internal citations omitted)). Here, Moore's arguments in opposition to T-Mobile's motion for summary judgment touches on at least the first two of these four inquiries. Specifically, Moore argues (1) that he never entered into an arbitration agreement with T-Mobile and (2) that this action is not within the scope of that agreement. However, Moore also argues (3) that the arbitration provision is

unconscionable and (4) that T-Mobile waived its right to enforce this provision when it failed to assert the clause as an affirmative defense.  These arguments, along with the remaining two *Genesco* inquiries—namely, whether Congress intended TCPA claims to be nonarbitrable and whether to stay this action pending arbitration—are discussed seriatim below.

 **1.** Formation of the Arbitration Agreement

 Under the first prong of the *Genesco* test, Moore argues that T-Mobile's motion to compel arbitration should be denied because he never agreed to or executed an arbitration agreement with T-Mobile.  Whether the parties agreed to arbitrate a certain matter is governed by state-law principles regarding contract formation.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000). T-Mobile contends that New York law should apply because of the choice of law provision in the Service Agreement's Terms and Conditions.   Since Moore has never disputed this contention, this Court shall apply New York state law in determining whether the arbitration provision is enforceable.

 "It is 'well settled' under New York law that arbitration will not be compelled absent the parties' 'clear, explicit and unequivocal agreement to arbitrate.'"  *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 7-8 (2d Cir. 2009) (quoting *Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144, 863 N.Y.S.2d 391, 893 N.E.2d 807 (N.Y. 2008)).  "To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce."  *Granite Rock*, 130 S.Ct. at 2856 (citing *Rent–A–Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2778-79 (2010)).

 The evidence adduced by T-Mobile is sufficient to establish that that Moore entered into an arbitration agreement.   Moore originally (1) denied that he "signed any agreement to

arbitrate," and (2) asserted that T-Mobile could not proceed with its motion to compel arbitration without a copy of the signed agreement.  Moore Affirmation I at ¶¶ 60-61.  However, since his initial denial, Moore has twice tacitly admitted that he signed the Service Agreement.[1]  First, at his deposition, when questioned about the three-page Service Agreement, Moore testified: "I haven't signed it in any place, except the signature on the third page after [the line] 'I am of legal age' . . . I signed here."  Moore Dep. at 31:2-32:19.  Second, in Moore's PMC Response, dated October 6, 2012, Moore stated: "I signed a two page letter called: 'Important customer information.'"  Moore's PMC Response at 1.

Although Moore disputes that this was an arbitration agreement, the document Moore signed incorporated by reference the Terms and Conditions containing the arbitration provision.  As described previously, that section of the Service Agreement entitled, "Important Customer Information," states:

> Your agreement with T-Mobile includes this document ('Service Agreement'), the T-Mobile standard Terms and Conditions . . . and your specific Rate Plan terms. . . . **Please be sure to review the full Terms and Conditions included in your device box; you can also view and print Terms and Conditions by logging into www.T-Mobile.com . . . ."**

Def. 56.1 at ¶ 18.  In the section entitled, "CUSTOMER ACCEPTANCE," the document further states: "I understand that my agreement with T-Mobile affects my and T-Mobile's legal rights.  Among other things, it . . . [r]equires mandatory arbitration of disputes unless . . . I opt out of the arbitration procedures . . . ."  Def. 56.1 at ¶ 21 (bolding and capitalization in original omitted).

---

[1]

Although Moore's subsequent submission may contradict these admissions, "[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  *Hayes v. N.Y. City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *see also Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.").  If a party could raise an issue of fact simply by submitting an affidavit, contradicting the affiant's prior sworn statements, "this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  *Hayes*, 84 F.3d at 619 (quoting *Perma Res. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

Moore has offered no evidence, or even alleged, that he ever exercised his option under the Service Agreement.  Accordingly, Moore is bound by the terms of the arbitration provision.

Implicitly recognizing that his admissions at his deposition and thereafter undercut his assertion that he never signed an arbitration agreement, Moore now relies solely on his argument that T-Mobile failed to produce an executed copy of the Service Agreement.  Moore Affirmation II at ¶ 9.  Contrary to Moore's assertion, the fact that T-Mobile cannot locate a copy of the signed agreement does not preclude a motion to compel arbitration.  Under New York law, "[w]here a proper excuse has been shown for the non-production of the original writing, such as its loss or destruction, the admissions of the adversary, whether oral or written, can be received in evidence to prove the former existence as well as the contents of the writing." *Dependable Lists, Inc. v. Malek*, 98 A.D.2d 679, 680, 469 N.Y.S.2d 754, 755 (App. Div. 1st Dep't 1983) (citing *Mandeville v. Reynolds*, 68 N.Y. 528, 536 (N.Y. 1877).  Here, T-Mobile has offered uncontroverted evidence to establish that their attempts to locate Moore's signed Service Agreement have failed.  Def. 56.1 at ¶ 14.

**2.** Scope of the Arbitration Agreement

Moore also advances arguments under the second prong of the of the *Genesco* test, asserting that this action falls outside the scope of the arbitration agreement.  With respect to this prong, a court's inquiry is governed by the principle that, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *JLM Indus., Inc. v. Stolt-Neilsen SA*, 387 F.3d 163, 171 (2d Cir. 2004).  However, this court also recognizes that "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

The arbitration provision at issue is very broad.  The arbitration clause contained in T-Mobile's Terms and Conditions, which is incorporated by reference into the Service Agreement, provides, in pertinent part, that "ANY AND ALL CLAIMS OR DISPUTES BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT."  Def. 56.1 at ¶ 23 (bolding in original omitted).  In Moore's PMC Response, which is incorporated into his opposition papers, Moore argues that this dispute falls outside the scope of the arbitration agreement because "this is a case filed for illegal phone calls under TCPA and is not related to any services, devices, products, or any billing dispute."  Moore's PMC Response at 3.  However, Moore's claim under the TCPA relates to T-Mobile's alleged attempts to resolve a "billing dispute" concerning his Service Agreement.  Accordingly, the Court finds that the arbitration provision at issue is broad enough to encompass even this TCPA action.

### 3.      Moore's Argument Against Enforcement

Before addressing the remaining prongs of the *Genesco* inquiry, this Court will address Moore's contentions that, even if it existed and covered his claims, the arbitration agreement should not be enforced (1) because it is unconscionable and (2) because T-Mobile waived the arbitration provision by initially failing to raise it as an affirmative defense.

### A.      Unconscionability

When a party disputes the enforceability of an arbitration agreement by arguing that the agreement is void because it is unconscionable, this is a "gateway" matter that is typically decided by the court.  *Rent–A–Center*, 130 S.Ct. at 2777-78; *see also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion).  Under New York law, "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and

substantively unconscionable when made. . . . ."  *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (N.Y. 1988) (citation omitted).  "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract[, *per se*]."  *Ragone*, 595 F.3d at 121-22 (alterations in original) (quoting *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (App. Div. 2d Dep't 1983)).  "The concept of unconscionability must necessarily be applied in a flexible manner depending upon all the facts and circumstances of a particular case."  *Matter of Friedman*, 407 N.Y.S.2d 999, 1008 (App. Div. 2d Dep't 1978).

There is no evidence to suggest that any procedural unconscionability exists.  In determining whether an agreement is procedurally unconscionable, New York courts analyze factors including: (1) the setting of the transaction; (2) whether the party seeking to enforce the contract used high pressure tactics or deceptive language in the contract; (3) whether there is inequality of bargaining power between the parties; and (4) the experience and education of the party claiming unconscionability.  *See Morris v. Snappy Car Rental, Inc.,* 637 N.E.2d 253, 256-57 (N.Y. 1994); *Gillman*, 73 N.Y.2d at 11.  Furthermore, in contracts between service providers and their customers, "[i]t does not avail plaintiff[s] to argue that the arbitration provision is unconscionable without offering evidence that he could not have chosen another service provider."  *Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449 (App. Div. 1st Dep't 2003).

Moore argues that the arbitration provision is procedurally unconscionable because it is "an adhesion agreement and thus unenforceable."  Moore Affirmation II at ¶ 11.  However, Moore offers no support for his conclusory allegation.  Here, Moore sought out cellular service from T-Mobile and voluntarily provided the information necessary to draft the Service Agreement.  Nothing in the record suggests that T-Mobile pressured Moore to consent to the

arbitration provision.  In fact, the provision plainly advises Moore of his right to opt out of the arbitration provision within 30 days of activation.  *See Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d 190, 191, 786 N.Y.S.2d 478, 480 (App. Div. 1st Dep't 2004) (arbitration provision was "not unconscionable because plaintiff had the opportunity to opt out without any adverse consequences").  In addition, the arbitration provision is not hidden in the Service Agreement or deceptive.  The Service Agreement is only three pages long, and the arbitration provision, which appears in boldface, is written in plain, readily comprehensible language.

Similarly, a claim of substantive unconscionability is unfounded.  "Substantive elements of unconscionability appear in the context of the contract *per se*. . . ."  *Friedman*, 407 N.Y.S.2d at 1008.  A contract is substantively unconscionable where its terms are unreasonably favorable to the party against whom unconscionability is claimed.  *See Desiderio v. NASD*, 191 F.3d 198, 207 (2d Cir. 1999), *cert. denied*, 531 U.S. 1069 (2001).  Generally, arbitration agreements that bind both parties do not favor the stronger party unreasonably.  *See id.*

Here, Moore cites cases suggesting that the arbitration agreement is substantively unconscionable because it contains a class action waiver provision.  Specifically, Moore Affirmation II cites to federal cases invalidating arbitration agreements based on their inclusion of class action waivers.  *Id.* at 4-5 (citing *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087 (9th Cir. 2009); *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213 (9th Cir. 2008); *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007), and *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009).  However, none of these cases apply New York law.  *Chalk* held an arbitration agreement substantively unconscionable under Oregon law, *Lowden* held an arbitration agreement substantively unconscionable under Washington law; and *Shroyer* and *Laster* both held arbitration agreements substantively unconscionable under California law.

Moreover, Moore disregards the fact that these cases have been overruled by a recent Supreme Court decision. *See AT&T Mobility v. Concepcion*, 131 S.C.t 1740 (2011) (holding that the FAA preempts state laws that would void arbitration agreements based on their inclusion of a class action waiver).[2]  In light of these findings, the Court concludes that Moore's arbitration agreement is not unconscionable.

   B.   *Waiver*

   Moore also argues that T-Mobile waived its right to compel arbitration when it failed to assert arbitration as an affirmative defense in its original answer.  This assertion is incorrect. Since "there is a strong presumption in favor of arbitration[,] . . . waiver of the right to arbitration is not to be lightly inferred."  *Coca-Cola Bottling Co. v. Soft Drink and Brewery Workers Union Local 812*, 242 F.3d 52, 57 (2d Cir. 2001) (internal quotation marks omitted). "[W]aiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated."  *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985).

   The Second Circuit recognizes two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay.  *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991).  "Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his

---

[2] Although *Concepcion* stands for the proposition that class action waivers cannot be invalidated under state law, this Court notes that the Second Circuit has recently distinguished circumstances where class action waivers can be invalidated on grounds other than state law.  *See In re Am. Express Merchants' Litig.*, 667 F.3d 204, 210 (2d Cir. 2012) (finding an arbitration agreement with a class action waiver unenforceable where plaintiffs had successfully demonstrated that the costs of pursuing arbitration would significantly exceed an individual's possible damage award).  However, this Court finds the *Amex* ruling to be inapplicable to the instant set of facts because Moore never alleges nor does the record indicate that his arbitration costs would exceed his likely arbitral award.  Instead, Moore only asserts that his alleged arbitration filing fee of $10,000 prevents him from initiating a $420,000 claim against T-Mobile.

adversary to incur unnecessary delay or expense." *Id.* Here, Moore fails to demonstrate that he has suffered either type of prejudice recognized in this Circuit.

First, Moore has not been substantively prejudiced because the merits of his claim against T-Mobile for violations under the TCPA have not yet been litigated. Second, Moore did not encounter excessive cost or delay when T-Mobile asserted a right to compel arbitration in its amended answer. Moore has asserted that arbitration in this case will "cost [him] a filing fee of about $10,000," and that "because [he is] unable to pay such fee, the prejudice to [his] case is clear." Moore's PMC Response at 3. However, these conclusory allegations do not establish unnecessary delay or expense. To show unnecessary delay, Moore would need to demonstrate that T-Mobile's amended answer caused him unnecessary expenses associated with extensive discovery or motion practice. *See Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2001) (finding that "this Circuit has refused to find waiver in a number of cases where delay in trial proceedings was not accompanied by substantial motion practice or discovery.") (internal citations omitted). Here, T-Mobile filed its original answer on February 3, 2010 and submitted its amended answer eight weeks later on March 31, 2010 before any extensive discovery or motion practice.

With respect to expense, Moore's allegation regarding a $10,000 arbitration filing fee is unsubstantiated and speculative. In determining whether arbitration costs are prohibitive, courts generally undertake a "case-by-case analysis, that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether the cost differential is so substantial as to deter the bringing of claims." *See Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 293 (S.D.N.Y. 2002) (quoting *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d

549, 556 (4th Cir. 2001)); *accord Gill v. World Inspection Network Int'l, Inc.*, No. 06-civ-3187, 2006 U.S. Dist. LEXIS 52426, at *24-25 (E.D.N.Y. July 31, 2006).  It is well established that the "mere risk of prohibitive costs is too speculative to justify invalidating an arbitration clause." *Barbieri v. K–Sea Transp. Corp.*, 566 F. Supp. 2d 187, 194-95 (E.D.N.Y. 2008) (citing *Green Tree*, 531 U.S. at 91).  In addition, where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.  *In re Am. Express Merchants' Litig.*, 667 F.3d 204, 210 (2d Cir. 2012).

Here, T-Mobile's Terms and Conditions provide that the arbitration will be governed by the American Arbitration Association's ("AAA") Commercial Arbitration Rules.  Def. 56.1 at ¶ 27.  Under AAA Rule 49, "The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees."  AAA, Commercial Arbitration Rules at ¶ R-49. Courts in this circuit have found that such a provision weighs against invalidating an arbitration provision on the basis of potentially high costs.  *See, e.g., Valdes v. Swift Transp. Co.*, Inc., 292 F. Supp. 2d 524, 534 (S.D.N.Y. 2003) (finding plaintiff's claims of prohibitive costs "especially speculative" in light of the AAA's hardship provision); *Rajjak v. McFrank & Williams*, No. 01-civ-493 (LAP), 2001 WL 799766, at *4 (S.D.N.Y. July 13, 2001) (deeming it "unclear what the arbitration fees will be," partly because "the arbitral panel may waive the arbitration costs based on the plaintiff's hardship").  In light of these facts, the Court finds that Moore has failed to meet his burden of showing that the potential costs of arbitration constitute a barrier to asserting his TCPA claim.  Therefore, arbitration appears to be an appropriate and accessible substitute for litigation in this case.

    **1.**    Arbitrability of Claims under the TCPA

Returning to the factors set forth under *Genesco*, the third inquiry a district court must resolve is whether Congress intended the Federal claims asserted "to be nonarbitrable." *JLM Indus.*, 387 F.3d at 169 (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)). Generally, "although all statutory claims may not be appropriate for arbitration, 'having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue.'" *14 Penn Plaza LLC v. Pyett*, 129 S.Ct. 1456, 1465 (2009) (quoting *Gilmer v. Interstate/Johnson Lane Corp*, 500 U.S. 20, 25 (1991)). "[T]he burden lies with the party attempting to avoid arbitration 'to show that Congress intended to preclude a waiver of a judicial forum' for his claims." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 235 (2d Cir. 2006) (quoting *Gilmer*, 500 U.S. at 26).

The Court finds no indication that Congress intended TCPA claims to be nonarbitrable and Moore presents no evidence to this effect. Indeed, courts in other jurisdictions have enforced the arbitration of TCPA claims where arbitration provisions were sufficiently broad in scope to encompass such claims. *See Obremski v. Springleaf Fin'l Servs., Inc.*, No. 8:12-cv-1594-T-33AEP, 2012 WL 3264521, at *2-3 (M.D. Fla. Aug. 10, 2012) (holding that plaintiff's claims under the TCPA were encompassed by a broad arbitration clause); *Tookenay v. Santander Consumer USA, Inc.*, No. 12-80542-CIV, 2012 WL 3245343, at *2 (S.D. Fla. Aug. 9, 2012) (holding that "[TCPA] claims fall squarely within the broad scope of the parties' Arbitration Clause."); *Knutson v. Siruis XM Radio Inc*, No. 12-cv-418 AJB (NLS), 2012 WL 1965337, at *8 (S.D. Cal. May 31, 2012) (holding that "[t]here is an agreement between the parties to arbitrate and the [TCPA] claim at issue falls within the scope of the Agreement."); *Montgomery v. Applied Bank*, 848 F. Supp. 2d 609, 619 (S.D.W. Va. 2012) (holding "that the Plaintiff's [TCPA]

claims are arbitrable because the claims are within the scope of a valid and legally enforceable agreement").  As such, the Court finds that Moore's TCPA claims are subject to arbitration under the Service Agreement's broad arbitration provision.

 **2.** Request for a Dismissal

 The fourth *Genesco* inquiry applies only "if the court concludes that some, but not all, of the claims in the case are arbitrable . . . ."  *Genesco*, 815 F.2d at 844-45.  Under such circumstances, the Court "must then determine whether to stay the balance of the proceedings pending arbitration." *Id.*  In this case, the only claim relates to T-Mobile's alleged violations under the TCPA—the very issue to be decided in arbitration.  Accordingly, the fourth inquiry does not apply, and T-Mobile's request for dismissal, rather than a stay, of this action is granted. *See Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91, 96 (S.D.N.Y. 1997) (if all of the plaintiff's claims are submitted to arbitration, "no useful purpose will be served by granting a stay of these proceedings").

***CONCLUSION***

 For the reasons set forth above, defendant T-Mobile's motion for summary judgment with respect to its motion to compel arbitration is granted.  Plaintiff Moore's cross-motion for summary judgment is denied.  In light of this Court's conclusion that the mandatory arbitration provisions in the Service Agreement—which include prohibitions on bringing or participating in class actions—are binding on plaintiff Moore, this Court need not address Moore's Motion to File an Amended Complaint.

 **SO ORDERED.**

_____/s/_____
SANDRA L. TOWNES
United States District Judge

Dated: September 28, 2012
      Brooklyn, New York